No. 3–08–0985
Consolidated with No. 3–08–0986

Filed October 15, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos.  06–CF–370 07–CF–475 |
| ROBERT L. BOMAR, JR., | ) ) ) | Honorable Charles H. Stengel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT, delivered the opinion of the court:

On August 30, 2007, the State charged defendant with the offense of aggravated battery with a firearm, and on September 21, 2007, the State filed additional charges for the offenses of aggravated discharge of a firearm and attempted first degree murder in cause No. 07–CF–475. The State filed a petition to revoke defendant's probation in cause No. 06–CF–370 based on the offense of aggravated battery with a firearm and other technical violations. On December 5, 2007, the trial court found defendant violated his probation, and a jury found defendant guilty of all offenses charged in cause No. 07–CF–475.

On appeal, defendant asserts that the State failed to prove defendant guilty in cause No. 07–CF–475 and failed to prove defendant violated his probation in cause No. 06–CF–370.

Additionally, defendant claims the trial court improperly failed to consider defendant's posttrial claims of ineffective assistance in cause No. 07–CF–475. Finally, defendant contests the orders requiring him to submit a DNA sample and pay a $200 DNA analysis fee in both felony cases.

FACTS

On August 30, 2007, the State filed an amended information in cause No. 07–CF–475 alleging defendant committed the offense of aggravated battery with a firearm in violation of section 12-4.2(a)(1) of the Criminal Code (720 ILCS 5/12-4.2(a)(1) (West 2006)) by shooting DeAndrew Abbott in the abdomen with a firearm, thereby causing injury to Abbott. On September 5, 2007, the State filed a petition to revoke defendant's probation in cause No. 06–CF–370 alleging, in part, defendant violated his probation by committing the offense of aggravated battery with a firearm as alleged in cause No. 07–CF–475.

On September 21, 2007, the State filed two additional counts against defendant in cause No. 07–CF–475. Count II alleged defendant committed the offense of attempted first degree murder in that defendant committed a substantial step toward the commission of first degree murder in that defendant placed a revolver to the head of DeAndrew Abbott and pulled the trigger with the intent to kill Abbott in violation of section 8-4(a) of the Criminal Code (720 ILCS 5/8-4(a) (West 2006)). Count III alleged defendant committed the offense of aggravated discharge of a firearm in that defendant discharged a firearm, a revolver, in the direction of DeAndrew Abbott and Lavonte Cooper within 1,000 feet of Denkmann School in Rock Island, Illinois in violation of section 24-1.2(a)(2) of the Criminal Code (720 ILCS 5/24-1.2(a)(2) (West 2006)).

On December 3, 2007, defendant's jury trial began. The State called DeAndrew Abbott

2

as its first witness. Abbott testified that in May 2007, he worked at Xpac as a data entry person. Abbott testified that he worked in the same area as Courtney Burbridge and had a disagreement with Burbridge at work a few days before May 26, 2007. According to Abbott, Burbridge became hostile and said that she would call her boyfriend. Abbott reported the incident to his supervisor. After the incident, Abbott went to McDonald's for lunch. At that location, Abbott unexpectedly encountered defendant. The men exchanged words, and defendant said that he was there "making sure there's not going to be any other problems with [his] girlfriend." When he returned to work, Abbott reported this second incident to another supervisor at work.

Later, on May 26, 2007, Abbott attended a birthday party at Daphne Reese's house located at 3905 - 23 Avenue in Rock Island, Illinois. He went to the party with Lavonte Cooper and James Wilmington at approximately 7:30 or 8 p.m. When he arrived, Abbott said he saw defendant and Burbridge at the party. Abbott testified that defendant said, "Well, if we going – we might as well squash this now today." Later, he learned that this comment indicated that "[i]t was supposed to to [sic] be a physical fist fight." Abbott left the party with defendant in order to fight. Cooper, Wilmington and Mike Reese accompanied him. They walked along 39 Street for one block, turned left and proceeded to the area of 23 Avenue and 41 Street in Rock Island, Illinois. At that point, defendant turned around and said, "What's your bitch ass say so now?" Abbott testified that defendant "pulled out the gun, and he fired." Abbott said that defendant shot him in the "lower half of [his] stomach on the left side." Abbott explained that after he was shot, he fell back onto the curb. Defendant approached him and said, "Now I'm going to kill you right now, and he tried – and he pulled the trigger and it clicked. And when it clicked, that's when he struck me in the ear with the gun."

3

Abbott testified he pushed the gun aside, as defendant was trying to fix the gun, and ran away with the assistance of Cooper. Defendant then fired the gun three or four times, but he was not struck by any of these bullets. Abbott said that he, Cooper and Wilmington ran back to the house on 23 Avenue, entered their vehicle, and drove to the hospital.

After arriving at the hospital, he admitted that he told the doctors, nurses and the police officer who responded to the hospital that he "didn't see anybody" and that he was walking toward his car and heard shots. Abbott explained that he said this because he was scared defendant "would try to come back and finish the job." Later at the hospital, Abbott advised Detective Whitcomb that defendant shot him.

Jeffrey Donkers testified that he worked at Xpac as a receiving supervisor and closing general manager. Donkers said that on May 24, 2007, he became aware of a disagreement between two employees, Abbott and Burbridge. He explained that he spoke to both subjects about the disagreement.

Antonio Bernas testified that he worked as a physician surgeon licensed to practice medicine in the State of Illinois since 1976. Bernas testified that he treated Abbott for a gunshot wound at Trinity West hospital in the late evening hours of May 26, 2007, and the early morning hours of May 27, 2007. Bernas explained that due to the location of the bullet in Abbott's body, Bernas, along with an orthopaedic surgeon, decided not to remove the bullet. Bernas treated the entry wound and monitored Abbott for any other possible injuries. According to Bernas, Abbott was hospitalized for two days, along with aftercare visits.

Daphne Reese testified that she resided at 3905 - 23 Avenue in Rock Island, Illinois. On May 26, 2007, she hosted a birthday party at her house for her mother. Reese said Wilmington

4

came to the party with some other individuals, but she did not "know their names." Reese testified that defendant and his girlfriend, Courtney, were not invited to the party, but she allowed them to stay. She said that Wilmington hugged and kissed her before he and the others left. Later, Wilmington and the two other males came back. After she realized one of the boys had been shot, Reese called the police.

On cross-examination, Reese said she could not recall exactly what she said during her call to the police. She acknowledged that she mentioned defendant's name during the 911 call, but denied speaking to anyone in order to learn defendant's name. Reese said that "Robert [defendant] was the only Robert that was at my house."

Lavonte Cooper testified that on May 26, 2007, he, Abbott and Wilmington went to a birthday party for Wilmington's grandmother at Daphne Reese's house. Cooper said he, Abbott and Wilmington left the party and went "down the street." Cooper testified that Abbott and defendant "were about to fist fight," but defendant "turned around and shot DeAndrew [Abbott] in the stomach." Cooper also testified that after Abbott was shot and fell to the ground, "Robert [defendant] came up and pointed the gun to his head." He heard defendant threatening Abbott but did not "see what he [defendant] did with the gun." Cooper stated that defendant fired the gun while pointing the gun at Abbott's head, but Abbott "swatted the gun out of his [defendant's] hand as it fired." Cooper explained he heard the gun "clicking" when defendant fired it toward Abbott's head. While running away with Abbott, Cooper heard another shot and looked back to see defendant firing the gun.

Corey Martin testified that he was arrested and held in the Rock Island County jail beginning September 25, 2007. He admitted that he had four pending felony charges for various

5

drug offenses.  Further, Martin acknowledged that he had been convicted for the felony offense of unlawful possession of a controlled substance in 1998 and that he was currently addicted to illegal drugs.

Martin denied receiving offers from the State in exchange for his testimony.  Martin stated that he was housed in the same cell block as defendant.  During one of his conversations with defendant in jail, he asked defendant about his pending case.  Martin said that he asked defendant if he shot the person, and defendant said, "yes."  According to Martin, defendant shot the person "[p]retty much over his girlfriend" because "[t]he victim and his girlfriend got into an argument."  Martin said that defendant told him he was angry about the argument, that he met the victim at a party, and that he tried to provoke the victim.  Defendant told Martin he shot the victim in the stomach and then he put the gun to the victim's head, but the gun did not fire.  Defendant said that he was "[t]rying to finish the job" when he put the gun to the victim's head.  After the incident, defendant explained to Martin that he fled to Iowa City or Coralville.

Greg Whitcomb testified that he worked as an investigator with the Rock Island police department.  On May 26, 2007, he began investigating an incident involving the shooting of Abbott.  On that date, he responded to Trinity West hospital, where Abbott was receiving treatment.  After speaking with other individuals at the hospital, Whitcomb assembled a photographic lineup that included defendant.  According to Whitcomb, Abbott identified defendant as the shooter.  Thereafter, Whitcomb obtained a warrant, and defendant was arrested on June 20, 2007, in Coralville, Iowa.  At the conclusion of Whitcomb's testimony, the State rested.

The defense called Estelle Stevenson as their first witness.  Stevenson testified that

6

Daphne Reese is her cousin and that she attended a party for her aunt at Reese's house on May 26, 2007. She said that she did not see defendant at the party.

James Wilmington testified that on May 26, 2007, he went to a birthday party for his grandmother at Daphne Reese's house. Wilmington said he went to the party with Abbott and a person named Lavonte. He denied leaving the party with Abbott and Lavonte and denied being aware of a shooting. Wilmington also testified he saw defendant at the party, but did not see defendant leave the party.

Raymond Glass testified he was currently being held in the Rock Island County jail in a cell block with defendant and eight other people. He stated he had been in custody since September 10, 2007. During his time in the county jail, he did not see or hear Martin communicate with defendant.

Defense then called Shelly Toure to testify. Toure testified that she worked as a recruiting coordinator for Xpac. Toure also testified that she is Burbridge's mother and that defendant was her daughter's boyfriend. She testified that on May 6, 2007, she attended a birthday party for her daughter's great aunt. Toure said she arrived at the party at approximately 6 or 6:30 p.m. About 15 or 20 minutes later, defendant and Burbridge arrived. Toure left the party at 9:15 or 9:20 p.m. and indicated that defendant and Burbridge left before her. During the party, Toure spoke with defendant, and she described defendant as being in a good mood. She learned of the shooting later that same night, after she received two telephone calls from Reese and a person named Nita. After receiving the telephone calls, she contacted Burbridge. Toure said that Burbridge came to her house around 12:10 a.m. and stayed until some time after 12:45 a.m. At the conclusion of Toure's testimony, defense rested.

7

The State called Detective Whitcomb as a rebuttal witness. Whitcomb testified that he interviewed Toure on May 29, 2007. During the interview, Toure told him that she saw defendant at the party and that defendant was in a bad mood and standoffish. At the conclusion of Whitcomb's testimony, the State rested. Following deliberations on December 5, 2007, the jury found defendant guilty of all three offenses charged in the amended information in cause No. 07–CF–475.

While the jury was deliberating, the trial court conducted a hearing on the State's petition to revoke defendant's probation in cause No. 06–CF–370. The trial court found defendant violated his probation as alleged in the petition.

On May 30, 2008, the trial court denied defendant's posttrial motions and proceeded to sentencing. During the sentencing hearing, defendant complained that he suffered:

> "conflict of interest issues during the pretrial proceedings, also trial, also post trial proceedings. I did not allege elementary typical issues of conflict of interest during post trial proceedings because I was being precautious of the trial court's first ruling of my Pro Se motion, but if the trial courts would indeed like for me to present the issues that I have of attorney client interest I have prepared a list of accusations which my attorney – which my appointed attorney is obligated to protect my life and liberty."

The trial court stated "these accusations should have been made prior to sentencing and this is an unsworn statement. So it's too late." The court heard sentencing recommendations and took the matter under advisement.

On June 10, 2008, the trial court entered a written order sentencing defendant to 10 year imprisonment in cause No. 06–CF–370. In addition, the trial court ordered defendant to submit blood, saliva or other tissue to the Illinois State Police and to pay an analysis fee of $200.

In cause No. 07–CF–475, the trial court sentenced defendant to 30 year imprisonment on counts I and III, and 40 year imprisonment on count II. Additionally, in cause No. 07–CF–475, the trial court ordered defendant to submit blood, saliva or other tissue to the Illinois State Police and to pay an analysis fee of $200. On November 24, 2008, the trial court denied defendant's motion to reconsider sentence.

Defendant filed a notice of appeal in each case on November 26, 2008.

ANALYSIS

I. Sufficiency of the State's Evidence - Cause No. 07–CF–475

First, defendant challenges the sufficiency of the State's evidence claiming that inconsistencies in the State's key witnesses and lack of physical evidence justifies a reversal of defendant's conviction. The State responds that the prosecution proved defendant guilty beyond a reasonable doubt.

It is well established that in reviewing a challenge to the sufficiency of the evidence, the appropriate standard is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002), quoting *Jackson v. Virginia,* 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89, (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "The same standard of review applies when reviewing the sufficiency of evidence in all criminal cases, regardless of whether the

9

evidence is direct or circumstantial." *People v. Pollock*, 202 Ill. 2d at 217.

Decisions regarding the credibility of witnesses and the weight given to their testimony are exclusively within the province of the trier of fact. *People v. Collins*, 106 Ill. 2d at 261-62. Similarly, it is for the trier of fact to resolve any conflicts in the evidence. *People v. Collins*, 106 Ill. 2d at 262, citing *People v. Kubat*, 94 Ill. 2d 437, 468 (1983). A defendant's criminal conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt. *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007), citing *People v. Smith,* 185 Ill. 2d 532, 542 (1999); *People v. Pollock*, 202 Ill. 2d at 217; *People v. Collins*, 106 Ill. 2d at 261. A reviewing court should not retry a defendant when considering a sufficiency of the evidence challenge. *People v. Wheeler*, 226 Ill. 2d at 114.

In this case, the jury heard testimony from multiple witnesses. The State offered eyewitness testimony from DeAndrew Abbott and Lavonte Cooper. Abbott told the jury that on the night of the incident, defendant "pulled out the gun, and he fired." Abbott said that defendant shot him in the "lower half of [his] stomach on the left side." Abbott explained that after he was shot, he fell back onto the curb. Defendant approached him and said, "Now I'm going to kill you right now, and he tried – and he pulled the trigger and it clicked. And when it clicked, that's when he struck me in the ear with the gun." Abbott positively identified defendant in open court as the gunman.

Lavonte Cooper testified that on May 26, 2007, he, Abbott and Wilmington walked to the area of 41st Street and 23rd Avenue. Cooper said that Abbott and defendant "were about to fist fight," but defendant, "turned around and shot DeAndrew [Abbott] in the stomach." Cooper also said that after Abbott was shot and fell to the ground, "Robert [defendant] came up and pointed

10

the gun to his head." Cooper also positively identified defendant in court as the gunman.

While the jury was faced with conflicting testimony from various defense witnesses, the jury, as the trier of fact, was required to make credibility decisions regarding the testimony presented. Such decisions are exclusively within the province of the jury, and it is for the jury to resolve conflicts in the evidence. *People v. Collins*, 106 Ill. 2d at 261-62. Viewing the evidence in the light most favorable to the prosecution, we cannot conclude the State's evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt. *People v. Wheeler*, 226 Ill. 2d at 115, citing *People v. Smith,* 185 Ill. 2d at 542; *People v. Pollock*, 202 Ill. 2d at 217; *People v. Collins*, 106 Ill. 2d at 261. Accordingly, we affirm defendant's convictions.

## II. Posttrial Claims of Ineffective Assistance of Counsel

Defendant next claims that the trial court erred by failing to consider defendant's posttrial claims of ineffective assistance of counsel as required by *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny. The parties agree that we review *de novo* the question of whether the trial court erred in the manner in which it addressed defendant's posttrial claims of ineffective assistance of counsel. See *People v. Moore*, 207 Ill. 2d 68, 75 (2003).

It is well established that when a defendant raises posttrial claims of ineffective assistance of counsel, the trial court is not obligated to appoint new counsel to represent defendant on those claims. The Illinois Supreme Court's decision in *Krankel* did not establish a *per se* rule that all *pro se* motions for a new trial alleging ineffective assistance of counsel must result in the appointment of new counsel. *People v. Munson*, 171 Ill. 2d 158, 199 (1996); *People v. Crane*, 145 Ill. 2d 520, 533 (1991).

11

Instead, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should then examine the factual basis of a defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *People v. Moore*, 207 Ill. 2d at 77, citing *People v. Chapman*, 194 Ill. 2d 186 (2000); *People v. Bull,* 185 Ill. 2d 179 (1998); *People v. Munson,* 171 Ill. 2d 158; *People v. Nitz,* 143 Ill. 2d 82 (1991). "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d at 78, citing *People v. Johnson,* 159 Ill. 2d 97, 125 (1994).

In this case, the State concedes that the trial court did not conduct a proper inquiry into defendant's claims. Moreover, the record reveals the trial court did not rule on those claims. However, the State argues that remand is unnecessary because defendant received effective assistance of counsel.

Our supreme court has held that a reviewing court should not consider the merits of a defendant's *pro se* posttrial motion when the motion has not been ruled upon by the trial court. *People v. Moore*, 207 Ill. 2d at 81, citing *People v. Jackson,* 158 Ill. App. 3d 394, 401 (1987). Therefore, the matter must be remanded to the trial court so that the trial judge can conduct a preliminary investigation.

### III. Sufficiency of the State's Evidence
#### Petition to Revoke Probation - Cause No. 06–CF–370

Defendant next asserts that the State failed to prove defendant violated his probation by committing the offense of aggravated battery with a firearm, but concedes he violated the terms

of his probation by committing the offense of driving while license revoked and by failing to obtain a substance abuse evaluation as alleged in the State's petition. Defendant claims that since the State did not prove that he committed the offense of aggravated battery with a firearm as alleged, defendant is entitled to a new sentencing hearing in cause No. 06–CF–370. The State responds that the prosecution's evidence was sufficient.

The State must prove a violation of probation by a preponderance of the evidence. 730 ILCS 5/5-6-4(c) (West 2006); *People v. Duplessis*, 248 Ill. App. 3d 195, 200 (1993). When we review a trial court's finding that a defendant has violated the terms of his probation, the standard of review is whether the judge's ruling is against the manifest weight of the evidence. *People v. Prusak*, 200 Ill. App. 3d 146, 149 (1990). Given this court's decision that the State proved defendant guilty beyond a reasonable doubt in cause No. 07–CF–475, we conclude that the trial court's finding that defendant violated his probation was not against the manifest weight of the evidence and that defendant is not entitled to a new sentencing hearing in cause No. 06–CF–370.

IV. Imposition of DNA Testing and Analysis Fee in Both Felony Cases

Finally, defendant argues that the trial court improperly required defendant to provide multiple DNA samples and pay multiple DNA analysis fees in both cause No. 06–CF–370 and cause No. 07–CF–475.

The statute at issue requires that any person convicted of a felony offense must submit blood, saliva or tissue samples to the Illinois State Police. 730 ILCS 5/5-4-3(a)(3.5) (West 2006). Further, any person who is required to submit a DNA sample to the Illinois State Police must pay a $200 analysis fee. 730 ILCS 5/5-4-3(j) (West 2006). The parties agree that this issue involves a question of law, which we review *de novo*. *People v. McCarty*, 223 Ill. 2d 109, 124

13

(2006); *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995).

However, the State notes that defendant did not include the issue in a posttrial motion and has forfeited the error. Alternatively, the State argues the statute requires the court to order a convicted felon to provide a DNA sample and pay the corresponding analysis fee regardless of prior fees paid or samples provided in the past.

In his reply brief, defendant asserts this court should address the issue pursuant to the plain error doctrine. The plain error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and (2) the evidence is closely balanced or the error affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Lewis*, 234 Ill. 2d 32, 42-43 (2009), citing *People v. Piatkowski,* 225 Ill. 2d 551, 565 (2007), *People v. Herron,* 215 Ill. 2d 167, 186-87 (2005). We address each felony conviction separately below.

### A. Cause No. 06–CF–370

The record shows that on September 6, 2006, the trial court sentenced defendant to serve a term of probation in cause No. 06–CF–370 and ordered defendant to submit a DNA sample and pay a $200 analysis fee as part of defendant's sentence in that case. When the trial court re-sentenced defendant for violating his probation in cause No. 06–CF–370, the written sentencing order entered on June 10, 2008, again ordered defendant to submit a DNA sample and pay a $200 analysis fee.

The defendant did not object to this provision in the sentencing order entered on June 10, 2008. Normally, the failure to object would constitute forfeiture. However, defendant urges this court to consider whether the trial court could properly order the fee following the violation of

14

probation using a plain error analysis.

First, it is unclear from the record whether the court ordered the submission of a second DNA sample and the payment of a second fee in cause No. 06–CF–370 on June 10, 2008, or whether the court simply ordered defendant to submit the DNA sample and pay the fee as originally ordered when defendant was sentenced to probation on September 6, 2006. Ordering defendant to submit a DNA sample and pay the fee as originally imposed does not constitute error.

However, if the court intended for defendant to submit a second DNA sample and pay a second DNA analysis fee as a consequence of the violation of probation, this component of the June 10, 2008, order would be erroneous. The plain language of the statute provides for the imposition of a single DNA sample and fee for a felony conviction. Therefore, it would be error to require defendant to submit two samples and pay two fees in cause No. 06–CF–370.

### B. Cause No. 07–CF–475

With regard to cause No. 07–CF–475, defendant claims that since the court ordered him to provide and then pay a fee for the analysis of his DNA sample in cause No. 06–CF–370, the court should not have ordered defendant to produce a DNA sample in cause No. 07–CF–475 based on the decision in *People v. Evangelista*, 393 Ill. App. 3d 395 (2009). The State argues that defendant forfeited this issue by not objecting to duplicate fees or court-ordered duplicate DNA samples before the trial court in 2008. Again, defendant urges this court to set aside the DNA sample and analysis fee in cause No. 07–CF–475 after applying a plain error analysis.

First, we examine the language of the statute to determine if the trial court erroneously ordered defendant to provide a DNA sample and pay a DNA analysis fee upon conviction for the

15

felony offense in cause No. 07–CF–475. The statute requires that any person convicted or found guilty of an offense classified as a felony under Illinois law shall submit a DNA sample. 730 ILCS 5/5-4-3(a)(3.5) (West 2006). The statute also provides that if a person is required to provide a DNA sample for analysis, then the person must pay an analysis fee of $200. 730 ILCS 5/5-4-3(j) (West 2006).

The current version of the statute enacted by the legislature does not limit the production of a DNA sample to an offender's first felony conviction. Similarly, the current version of the statute enacted by the legislature does not relieve the court of the obligation to order offenders with multiple convictions for qualifying offenses to provide DNA samples upon conviction. This court may not add terms or conditions to the language of the current version of the statute enacted by our lawmakers. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Until the statute is modified by the lawmakers or unless our supreme court provides additional guidance on this issue, we must conclude, based on the current version of the statute, that the trial court correctly imposed the fee in cause No. 07–CF–475.

Since there was no error when assessing the fee in cause No. 07–CF–475, we decline to address this issue because plain error did not occur. We conclude defendant has forfeited the issue involving the propriety of multiple DNA samples and fees assessed for multiple felony convictions.

CONCLUSION

Defendant's convictions for the offenses of aggravated battery with a firearm, attempted murder and aggravated discharge of a firearm in cause No. 07–CF–475 are affirmed. The trial court's ruling that defendant violated his probation in cause No. 06–CF–370 is affirmed.

16

The cause is remanded to the trial court for the trial judge to conduct a proper inquiry into defendant's posttrial claims of ineffective assistance of counsel consistent with the terms of this opinion. Additionally, the trial court is directed to clarify or amend the sentencing order in cause No. 06–CF–370 to insure defendant is ordered to submit a single DNA sample and pay one corresponding $200 DNA analysis fee in that case.

Affirmed in part and remanded with directions.

CARTER, J., concurs.

JUSTICE McDADE, concurring in part and dissenting in part:

The majority has found that the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt (slip op. at 12), that defendant's claim of ineffective assistance of trial counsel "must be remanded to the trial court so that the trial judge can conduct a preliminary investigation" (slip op. at 13), and that the trial court's finding that defendant violated his probation by committing the offense of aggravated battery with a firearm is not against the manifest weight of the evidence (slip op. at 14). I concur in those portions of the majority's judgment. The majority has also found that the trial court properly required defendant to provide a DNA sample and to pay the analysis fee as a consequence of convictions in both cause Nos. 06-CF-370 and 07-CF-475. Slip op. at 17.

I agree with the majority that it would be error to require defendant to submit two samples and to pay two fees as a consequence of the conviction and subsequent violation of probation in cause No. 06-CF-370. Slip op. at 16. I concur in that portion of the majority's judgment with regard to the submission of DNA samples and the payment of analysis fees in cause No. 06-CF-370.

17

I believe that requiring defendant to submit and pay an analysis fee for multiple DNA samples for his convictions in cause Nos. 06-CF-370 and 07-CF-475 is neither supported by logic or required by law. In *People v. Marshall*, ___ Ill. App. 3d ___, ___, 931 N.E.2d 1271, 1273 (July 8, 2010), we found that "[n]owhere in the statute did the legislature provide that a convicted felon should be excused from the statute's mandates if his DNA is already in the database, despite defendant's assertion that the language in the statute 'indicates that a person's DNA should be collected only once.' " *Marshall*, ___ Ill. App. 3d at ___, 931 N.E.2d at 1273. On those grounds, we declined to follow the holding in *People v. Evangelista*, 393 Ill. App. 3d 395, 399, 912 N.E.2d 1242, 1246 (2009), which found "that once 'a defendant has submitted a DNA sample, requiring additional samples would serve no purpose.' [Citation.]" *Marshall*, ___ Ill. App. 3d at ___, 931 N.E.2d at 1273, quoting *Evangelista*, 393 Ill. App. 3d at 399, 912 N.E.2d at 1246.

While I recognize that the current version of the statute enacted by the legislature does not limit the production of a DNA sample to an offender's first felony conviction (slip op. at 17), the current version of the statute also does not oblige the trial court to order offenders with multiple convictions to provide additional DNA samples upon every conviction. The relevant portion of the statute reads as follows:

> "Any person convicted or found guilty *** of any offense
> classified as a felony under Illinois law *** shall, regardless of the
> sentence or disposition imposed, be required to submit specimens
> of blood, saliva, or tissue to the Illinois Department of State Police
> in accordance with the provisions of this Section ***." 730 ILCS

5/5-4-3(a) (West 2006).

Although the majority does not state it explicitly, what it actually holds is that the statute requires defendants with a DNA sample on file to submit a duplicate DNA sample and to pay another analysis fee upon every subsequent conviction for a qualifying offense. None of the provisions of the statute require the submission of superfluous DNA samples. See 730 ILCS 5/5-4-3 (West 2006). Thus, I disagree with the grounds of decision in *Marshall* and the majority's reasoning here, that the statute "does not *relieve* the court of the *obligation* to order offenders with multiple convictions *** to provide DNA samples upon [each] conviction." (Emphases added.) Slip op. at 17. The statute does not *relieve* the trial court of that obligation because that obligation does not exist. The defendant is not *excused* from that mandate by only being required to submit *one* DNA sample because no mandate requiring duplicative samples exists in the statute. See *Marshall*, ___ Ill. App. 3d at ___, 931 N.E.2d at 1273.

Moreover, I believe that the holding in *Marshall* and the majority's judgment in the case at bar contradict the intent of the legislature. "[A]dministrative rules interpreting an act or ordinance are given substantial deference as an informed source of guidance as to legislative intent ***." *National Pride of Chicago, Inc. v. City of Chicago*, 206 Ill. App. 3d 1090, 1101, 562 N.E.2d 563, 570 (1990). Section (h) of the statute provides:

> "The Illinois Department of State Police may promulgate rules for
> the form and manner of the collection of blood, saliva, or tissue
> samples and other procedures for the operation of this Act. The
> provisions of the Administrative Review Law shall apply to all
> actions taken under the rules so promulgated." 730 ILCS 5/5-4-

3(h) (West 2006).

The statute is silent with regard to qualifying offenders who already have a DNA sample on file. The legislature's silence on that question creates an ambiguity in the statute that permits this court to look to extrinsic aids of construction. See *Gekas v. Williamson*, 393 Ill. App. 3d 573, 587, 912 N.E.2d 347, 359 (2009) (under the canon of construction of *expressio unius est exclusio alterius*, "[t]he force of the inference from silence depends on whether, under the circumstances, some further expression would have been expected"). In this case, the best aid is the interpretation of the statute by the agency charged with its enforcement.

> " 'It is generally recognized that courts will give substantial weight
> and deference to an interpretation of an ambiguous statute by the
> agency charged with the administration and enforcement of the
> statute.' [Citation.] An agency's interpretation expresses an
> informed opinion on legislative intent, based upon expertise and
> experience." *Sartwell v. Board of Trustees of Teachers' Retirement*
> *System*, No. 4-09-0810, slip op. at 16 (August 12, 2010).

The statute provides that "[a]gencies designated by the Illinois Department of State Police and the Illinois Department of State Police may contract with third parties to provide for the collection or analysis of DNA, or both, of an offender's blood, saliva, and tissue samples." 730 ILCS 5/5-4-3(d-6) (West 2006). Section 1285.30(c) of Title 20 of the Administrative Code provides, in part, as follows:

> "If the qualifying offender has not previously had a sample
> taken and is transferred to a facility under the control of the

-20-

Department of Corrections to serve a term of incarceration, the
Department of Corrections is the designated agency and is
responsible for the collection of the sample from the offender
before his/her release on parole, or mandatory supervised release or
final discharge or, in the event the offender is sentenced to death or
natural life, at any time." 20 Ill. Adm. Code §1285.30(c)(2),
amended at 31 Ill. Reg. 9249, 9254, eff. June 12, 2007.

Further, section 1285.30(g) provides that "[t]he designated agency is responsible for ensuring
that the offender is eligible for collection under the statute."

Unless "the qualifying offender for any reason is not under the control or supervision of
any agency listed in subsections (c)(1) through (c)(6)" (20 Ill. Adm. Code §1285.30(c)(7),
amended at 31 Ill. Reg. 9249, 9255, eff. June 12, 2007), every provision of the Code identifying
the "designated agency" that is "responsible for the collection of the sample from the offender"
and for "ensuring that the offender is eligible for collection under the statute" qualifies its
designation by requiring that the offender "has not previously had a sample taken" before it
identifies the agency. See 20 Ill. Adm. Code §§1285.30(c)(1) through (c)(6), amended at 31 Ill.
Reg. 9249, 9254-55, eff. June 12, 2007.

It is clear that if the offender is under the control of a "designated agency" and *has*
previously had a sample taken, there is no "designated agency responsible for sample collection,"
20 Ill. Adm. Code §1285.30(c), amended at 31 Ill. Reg. 9249, 9254-55, eff. June 12, 2007. It is
reasonable to assume that in practice, no additional sample will be collected by any agency under
those circumstances. Therefore, it also stands to reason that the agency charged with

administering the statute does not believe that the legislature intended the statute to require duplicate DNA samples to be on file or to mandate the collection of duplicate analysis fees, under any circumstances.

I find nothing that leads me to conclude that the statute requires a duplicate DNA sample from an offender with a sample already on file. I would reject this court's earlier decision in *Marshall*, grant defendant's petition for rehearing on this question, and reverse the trial court's order requiring defendant to submit multiple DNA samples and to pay multiple DNA analysis fees. Accordingly, I respectfully dissent.