Docket No. 110765.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EARL
LEE MARSHALL, Appellant.

*Opinion filed May 19, 2011.*

JUSTICE KARMEIER delivered the judgment of the court, with
opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman,
Burke, and Theis concurred in the judgment and opinion.

## OPINION

The issue presented in this case is whether, under section 5–4–3
of the Unified Code of Corrections (Code) (730 ILCS 5/5–4–3 (West
2008)), a trial court has the authority to order a defendant to submit
a sample of his deoxyribonucleic acid (DNA) for forensic analysis and
indexing and to pay a $200 DNA analysis fee where that defendant
has already submitted a DNA sample pursuant to a prior conviction
and has paid a corresponding analysis fee. Defendant, Earl Lee
Marshall, pleaded guilty to first degree murder in the circuit court of
Peoria County. At sentencing, the trial court imposed a term of 33
years' imprisonment and specified that there "is the judgment for costs
and mandatory assessments of DNA fee and testing." The written
sentencing order directed defendant to pay a $200 DNA assessment

fee. On direct appeal following denial of defendant's motion to reconsider sentence, defendant argued that the trial court lacked authority to order him to submit a DNA sample or pay the fee as his DNA was already on file. The appellate court found that defendant had forfeited this issue and that the trial court's order was not void because the order was authorized under section 5–4–3. 402 Ill. App. 3d 1080. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

BACKGROUND

After defendant was charged with first degree murder in June 2007, the State moved for an order directing defendant "to produce the buccal standard" for the purpose of DNA comparison analysis. At a hearing on that motion, the following exchange occurred:

"MR. GAST [Assistant State's Attorney]: Judge, we have a Motion for Samples. It's my understanding that the lab has found some blood samples that would be available for testing with the defendant's DNA, so therefore, we're asking pursuant to Supreme Court Rule for a sample to be taken from the defendant.

THE COURT: We'll hear from the defendant.

MR. TONER [Assistant Public Defender]: Judge, our understanding is that Mr. Marshall's DNA is already of record, so there would be no reason to take any further DNA.

THE COURT: Mr. Gast, any knowledge of that?

MR. GAST: I don't have any knowledge of that other than–is it a CODIS [Combined DNA Index System] sample?

MR. TONER: Yeah."

The State reiterated its request for a buccal sample from defendant, and the court granted the motion.

On January 17, 2008, the parties appeared in court and defendant's counsel announced that an agreement had been reached whereby defendant would plead guilty as charged, and would be sentenced to imprisonment for a term capped at 33 years. Defendant pleaded guilty, the court accepted the plea and scheduled a sentencing hearing. Thereafter, defendant filed a *pro se* motion to withdraw his

-2-

guilty plea. At a hearing on the motion, the court heard testimony and argument before denying the motion.

The presentence investigation report (PSI) prepared for defendant noted, *inter alia*, that his DNA was "Registered." The PSI further detailed defendant's 2002 guilty plea to a felony traffic offense in Woodford County case No. 01–CF–65, his three-year sentence, and noted: "He was received at the Illinois Department of Corrections on January 9, 2002. He was paroled out on November 27, 2002. The defendant was returned to the Department of Corrections as a parole violator on August 28, 2003. He was discharged from parole on October 16, 2003." The PSI also reveals that on December 29, 2005, defendant pleaded guilty to a felony traffic offense in Tazewell County case No. 05–CF–264, and was sentenced to 24 months' probation and ordered to serve 180 days in the Tazewell County jail. His probation was terminated unsuccessfully on January 8, 2008. As stated, at defendant's June 23, 2008, sentencing hearing in this case, the court imposed a 33-year term of imprisonment and a mandatory assessment for DNA testing, which $200 fee was included in the written sentencing order entered by the court.

On June 24, 2008, defendant filed, through counsel, another motion to withdraw his guilty plea; a motion to reconsider sentence claiming the 33-year term of imprisonment was excessive; and an amended motion to reconsider sentence, reiterating that the sentence was excessive, but also arguing that the trial court had erred in refusing to admit evidence of the decedent's mental health history. Defendant later filed a *pro se* supplemental motion to withdraw the guilty plea wherein he claimed that he was not guilty and that he pleaded guilty due to his fear of the real killer. Following a hearing, the trial court denied defendant's supplemental motion to withdraw the guilty plea. At that same hearing, the court also denied the amended motion to reconsider sentence. Defendant appealed.

On appeal, defendant argued for the first time that because he had previously submitted a specimen of blood, saliva, or tissue, the circuit court lacked the statutory authority to order him to submit another such sample, and to pay the $200 DNA analysis fee, as part of his sentence in this case. The appellate court rejected this argument, concluding that considering the language of section 5–4–3 and the fact that the legislature put in place a process to expunge DNA from the

database, "we cannot agree with defendant's reading of the statute that a court lacks the authority to order a defendant to give DNA and pay the $200 analysis fee more than once." 402 Ill. App. 3d at 1083. The panel also found the issue forfeited and affirmed the circuit court's judgment. 402 Ill. App. 3d at 1083-84.

ANALYSIS

Section 5–4–3 of the Code provides, in essential part, as follows:

"§5–4–3. Persons convicted of, or found delinquent for, certain offenses or institutionalized as sexually dangerous; specimens; genetic marker groups.

(a) Any person convicted of, found guilty under the Juvenile Court Act of 1987 for, or who received a disposition of court supervision for, a qualifying offense or attempt of a qualifying offense, convicted or found guilty of any offense classified as a felony under Illinois law, convicted or found guilty of any offense requiring registration under the Sex Offender Registration Act, found guilty or given supervision for any offense classified as a felony under the Juvenile Court Act of 1987, convicted or found guilty of, under the Juvenile Court Act of 1987, any offense requiring registration under the Sex Offender Registration Act, or institutionalized as a sexually dangerous person under the Sexually Dangerous Persons Act, or committed as a sexually violent person under the Sexually Violent Persons Commitment Act shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section ***.

* * *

(j) Any person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200." 730 ILCS 5/5–4–3(a), (j) (West 2008).

As is apparent from its title, the primary purpose of section 5–4–3

is the creation of a criminal DNA database of the genetic identities of recidivist offenders. See *People v. Garvin*, 219 Ill. 2d 104, 119 (2006); *People v. Rigsby*, 405 Ill. App. 3d 916, 917 (2010). Prior to his conviction herein for first degree murder, defendant had twice been convicted of a felony that would require him to provide a DNA sample and to pay the corresponding analysis fee. The record reveals that, at the time of his sentencing in this case, his DNA was "Registered" in CODIS. Defendant therefore argues that the trial court erred in requiring him to submit an additional DNA sample and ordering him to pay an additional $200 analysis fee in connection with his present conviction. As in *Rigsby*, the fundamental question presented here is whether section 5–4–3 should be read "to require submission of multiple and duplicative DNA samples and payment of additional analysis fees from an offender who has already submitted DNA samples pursuant to a prior conviction and has paid a corresponding analysis fee." *Rigsby*, 405 Ill. App. 3d at 917. Because the question is one of statutory interpretation, our review is *de novo*. *People v. Williams*, 239 Ill. 2d 503, 506 (2011); *People v. Beachem*, 229 Ill. 2d 237, 243 (2008).

The primary objective of statutory interpretation is to ascertain and give effect to the intent of our legislature. *Beachem*, 229 Ill. 2d at 243. "This inquiry 'must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent.' *People v. Pullen*, 192 Ill. 2d 36, 42 (2000)." *Id.* We construe the statute as a whole and afford the language of the statute its plain and ordinary meaning. *Id.* Where that language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Williams*, 239 Ill. 2d at 506.

However, if the statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010); *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009). If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent. *Id.* We construe the statute to avoid rendering any part of it meaningless or superfluous. *Solon*, 236 Ill. 2d at 440-41. We do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed

intent. *Id.* at 441. Nor do we view words and phrases in isolation, but consider them in light of other relevant provisions of the statute. *Beachem*, 229 Ill. 2d at 243. We may also consider the consequences that would result from construing the statute one way or the other. *Landis*, 235 Ill. 2d at 12. In doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences. *Id.*

With these principles in mind, we examine the statute at issue. The Illinois Appellate Court has repeatedly addressed the present contention, *i.e.*, that taking a DNA sample and assessing the analysis fee in a prior case bars the taking of a new sample and attendant fee in a subsequent case. In *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009), the Appellate Court, First District, Second Division, considered a challenge to the DNA analysis fee in light of the State's concession of error. "Although we have found no case directly on point, the obvious purpose of the statute is to collect from a convicted defendant a DNA profile to be stored in a database. [Citation.] Once a defendant has submitted a DNA sample, requiring additional samples would serve no purpose." *Id.* Agreeing with the parties, the panel vacated the analysis fee. In *People v. Willis*, 402 Ill. App. 3d 47, 61 (2010), the Fifth Division relied on *Evangelista* in similarly vacating a repetitive analysis fee, apparently without a concession by the State.

Thereafter, the Appellate Court, Third District, in this case noted that *Evangelista* was based on the State's concession of error and did not expressly analyze the language of section 5–4–3. 402 Ill. App. 3d at 1083. After performing such an analysis, the court concluded that where, *inter alia*, the statute used mandatory language in noting that any person convicted of a qualifying offense "shall" pay the fee, and did not provide that a convicted felon should be excused from the statute's mandates if his DNA was already in the database, "we cannot agree with defendant's reading of the statute that a court lacks the authority to order a defendant to give DNA and pay the $200 analysis fee more than once." *Id.*

In *People v. Grayer*, 403 Ill. App. 3d 797 (2010), the First District, Second Division, followed the holding of the appellate court in this case, expanding on the idea of the statute's silence regarding the question at hand.

> "Here, defendant is correct that the 'statute says nothing about requiring a fee each time a defendant is convicted of a

-6-

felony in this State.' However, we also agree with the *Marshall* court that nothing in the statutory language limits the taking of DNA samples or the assessment of the analysis fee to a single instance." *Grayer*, 403 Ill. App. 3d at 801.

Despite the legislature being "keenly aware of recidivism," and willing to manifest its concern in statutes, "the legislature did not address the issue of successive qualifying convictions in section 5–4–3, either by expressly authorizing or expressly excepting the taking of a second DNA sample or assessment of a second analysis fee upon a second qualifying conviction." *Id.*

However, in *People v. Rigsby*, 405 Ill. App. 3d 916 (2010), the First Division, while also noting the statute's silence on the issue, came to the opposite conclusion as the courts in this case and in *Grayer* by returning to the tenets of statutory interpretation.

> "Section 5–4–3 of the statute is silent and says nothing about requiring offenders to provide additional DNA samples upon every qualifying conviction or requiring payment of additional DNA analysis fees from an offender who has already complied with the statutory requirements and has samples of his DNA on file in the police database. The legislature's silence on these issues creates an ambiguity in the statute that permits us to look beyond its text to resolve the ambiguity." *Rigsby*, 405 Ill. App. 3d at 917-18 (citing *People v. Bomar*, 405 Ill. App. 3d 139, 153 (2010) (McDade, J., concurring in part and dissenting in part) (the legislature's silence on the question creates an ambiguity in the statute that permits this court to look to extrinsic aids of construction)).

It is commonly recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). An agency's interpretation expresses an informed opinion on legislative intent, based upon expertise and experience. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 98 (1992). Here, the statute provides that "[a]gencies designated by the Illinois Department of State Police and the Illinois Department of State Police" are in charge of "the collection or analysis of DNA, or both, of an offender's blood,

saliva, and tissue samples." 730 ILCS 5/5–4–3(d–6) (West 2008). Therefore, in *Rigsby*, 405 Ill. App. 3d at 918, the court looked to title 20 of the Administrative Code, which guides those agencies in implementing section 5–4–3, as the best aid in interpreting the statute.

As we believe this analysis in *Rigsby* to be well-reasoned, we reproduce it here:

"In Illinois, DNA is collected from qualifying offenders by detention facilities or by certain designated state, local, or private agencies. 730 ILCS 5/5–4–3(d–5), (d–6) (West 2008). Under section 1285.30 of Title 20 of the Administrative Code, *** facilities and agencies responsible for collecting DNA samples are designated based on the statutory presumption that the qualifying offender has not previously had a sample taken or collected: '*If the qualifying offender has not previously had a sample taken*' and is serving a term of incarceration in a facility under the control of the county sheriff or is being transferred to another state to serve the sentence, the designated agency is the sheriff's office; '*[i]f the qualifying offender has not previously had a sample taken*' and is transferred to a facility under the control of the Department of Corrections to serve a term of incarceration, the designated agency is the Department of Corrections; '*[i]f the qualifying offender has not previously had a sample taken*' and is transferred to a facility under the control of the Department of Juvenile Justice to serve a term of incarceration, the designated agency is the Department of Juvenile Justice; '*[i]f the qualifying offender has not previously had a sample collected*' and is transferred to the Department of Corrections to be institutionalized as a sexually dangerous person or institutionalized as a person found guilty but mentally ill of a sexual offense or an attempted sexual offense, the designated agency is the Department of Corrections; '*[i]f the qualifying offender has not previously had a sample collected*' and is ordered committed as a sexually violent person, the designated agency is the Department of Human Services; and '*[i]f the qualifying offender has not previously had a sample collected*' and is serving a sentence but not physically incarcerated, the

designated agency is the supervising agency such as a probation office. (Emphasis added.) 20 Ill. Adm. Code §§1285.30(c)(1) through (c)(6), amended at 31 Ill. Reg. 9249, 9254-55, eff. June 12, 2007.

In light of the italicized statutory language quoted above, it is reasonable to assume that, in practice, a designated facility or agency charged with administering the statute would not interpret it to require submission of multiple and duplicative DNA samples from an offender who has already submitted samples pursuant to a prior conviction. See *Bomar*, 405 Ill. App. 3d at 153-54 (McDade, J., concurring in part and dissenting in part); see also *Evangelista*, 393 Ill. App. 3d at 399 ('Once a defendant has submitted a DNA sample, requiring additional samples would serve no purpose').

A one-time submission into the police DNA database is sufficient to satisfy the purpose of the statute in creating a database of the genetic identities of recidivist criminal offenders, because once an offender's DNA data is stored in the database, it remains there unless and until the offender's conviction is reversed based on a finding of actual innocence or he is pardoned based on a finding of actual innocence. 730 ILCS 5/5–4–3(f–1) (West 2008).

Moreover, since the analysis fee is intended to cover the costs of the DNA analysis, and only one analysis is necessary per qualifying offender, then by extension only one analysis fee is necessary as well. See *Bomar*, 405 Ill. App. 3d at 154 (McDade, J., concurring in part and dissenting in part); *People v. Willis*, 402 Ill. App. 3d 47, 61, 934 N.E.2d 487 (2010). Notably, when the legislature has intended for a fee to be imposed on a per-conviction basis rather than a per-defendant basis, it has said so. See, *e.g.*, 730 ILCS 125/17 (West 2008) ('The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation *** ')." *Rigsby*, 405 Ill. App. 3d at 918-19.

We agree with the *Rigsby* court that the regulations implementing section 5–4–3 show an intent to require a single specimen of DNA be taken from each qualified person to create a profile for entry into the DNA database maintained by the Illinois Department of State Police,

rather than an intent to require submission of multiple and duplicative DNA samples from an offender who has already submitted samples pursuant to a prior conviction. As earlier stated, the silence on this question in the statutory language creates an ambiguity permitting this court to look to extrinsic aids of construction, and we must give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Accordingly, we determine that the statutory language, "Any person *** convicted or found guilty of any offense classified as a felony under Illinois law *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section," was meant to identify a population whose DNA must be present in the database. 730 ILCS 5/5–4–3(a) (West 2008). Similarly, the $200 analysis fee set forth in section 5–4–3 (j) "shall" be paid only when the actual extraction, analysis and filing of a qualified offender's DNA occurs.

We find support for this interpretation of section 5–4–3 by comparing a statute similarly designed to collect biological data from certain offenders. Section 5–5–3(g) provides, in pertinent part, as follows:

> "*Whenever* a defendant is convicted of an offense under Sections 11–14, 11–15, 11–15.1, 11–16, 11–17, 11–18, 11–18.1, 11–19, 11–19.1, 11–19.2, 12–13, 12–14, 12–14.1, 12–15, or 12–16 of the Criminal Code of 1961, the defendant shall undergo medical testing to determine whether the defendant has any sexually transmitted disease, including a test for infection with human immunodeficiency virus (HIV) or any other identified causative agent of acquired immunodeficiency syndrome (AIDS)." (Emphasis added.) 730 ILCS 5/5–5–3(g) (West 2008).

While the plain language of section 5–5–3 states that "[w]henever," *i.e.*, each and every time, a defendant commits the enumerated offenses he shall be tested for, *inter alia*, HIV, section 5–4–3, by contrast, does not contain this clear and simple directive that specimens be submitted, analyzed and categorized into genetic marker groupings "whenever" a qualified offender is convicted. Thus, we conclude that section 5–4–3 identifies a population whose DNA must

be present in the database, and accordingly the statutory requirements are fulfilled once a single DNA sample from each member of that population is registered.

Further, we do not believe the "loophole" analysis set forth by the appellate court below dictates a different result. *Rigsby*, 405 Ill. App. 3d at 919. That court posited that if a qualified offender was required to submit only one DNA sample, a scenario could occur which would result in that offender failing to have any DNA sample on file. 402 Ill. App. 3d at 1083. For example, an offender is convicted of a qualifying offense and a sample of his DNA is collected; the offender is later convicted of a second qualifying offense, but this time, no DNA sample is collected because a sample is already on file; the offender's first conviction is reversed and his DNA sample is expunged pursuant to section 5–4–3(f–1) (730 ILCS 5/5–4–3(f–1) (West 2008)), resulting in the offender having no DNA sample on file even though he has a valid conviction for a qualifying offense. 402 Ill. App. 3d at 1083.

> "We do not read the statute as providing such a loophole. We interpret the statute as requiring that a single DNA sample remain in the database for each person convicted of a qualifying offense. This means that if an offender's previous sample was expunged for whatever reason, a subsequent conviction would naturally require a new sample be taken and this would be sufficient for maintenance of the DNA database." *Rigsby*, 405 Ill. App. 3d at 919-20.

A thorough reading of section 5–4–3 not only confirms this view, but alleviates any concern that a loophole could exist allowing a qualified offender to escape DNA registry. First, under section 5–4–3(f–1), the only circumstances under which a DNA record may be expunged are:

> "Upon receipt of notification of a reversal of a conviction based on actual innocence, or of the granting of a pardon pursuant to Section 12 of Article V of the Illinois Constitution, if that pardon document specifically states that the reason for the pardon is the actual innocence of an individual whose DNA record has been stored in the State or national DNA identification index in accordance with this Section by the Illinois Department of State Police ***." 730

ILCS 5/5–4–3(f–1) (West 2008).

Additionally, subsection (a) provides that "[n]otwithstanding other provisions of this Section, any person incarcerated in a facility of the Illinois Department of Corrections on or after August 22, 2002 shall be required to submit a specimen of blood, saliva, or tissue prior to his or her final discharge or release on parole or mandatory supervised release." 730 ILCS 5/5–4–3(a) (West 2008). This provision assures that even those offenders identified in *Marshall* whose first DNA sample is expunged due to actual innocence would, if imprisoned at the time of expungement for a subsequent qualifying offense, be required to submit a new sample prior to their release from custody.[1] See also 730 ILCS 5/5–5–4(b) (West 2008) (Code section providing that those defendants who have been found "factually innocent," and whose convictions are accordingly expunged, will have their sealed records available to the court "for the purpose of sentencing for any subsequent felony").

Further, section 5–4–3, after listing the qualifying offenses and

---

[1]This subsection has been revised several times since the 2008 version of the statute at issue in this case to provide a more efficient and inclusive collection of DNA samples, and now provides:

> "Notwithstanding other provisions of this Section, any person incarcerated in a facility of the Illinois Department of Corrections or the Illinois Department of Juvenile Justice on or after August 22, 2002, whether for a term of years, natural life, or a sentence of death, who has not yet submitted a sample of blood, saliva, or tissue shall be required to submit a specimen *** prior to his or her final discharge, or release on parole or mandatory supervised release, as a condition of his or her parole or mandatory supervised release, or within 6 months from [August 13, 2009 (the effective date of Public Act 96–426)], whichever is sooner. Persons incarcerated on or after [August 13, 2009 (the effective date of Public Act 96–426)] shall be required to submit a sample within 45 days of incarceration, or prior to his or her final discharge, or release on parole or mandatory supervised release, as a condition of his or her parole or mandatory supervised release, whichever is sooner. These specimens shall be placed into the State or national DNA database, to be used in accordance with other provisions of this Section, by the Illinois State Police." Pub. Act 96–426 (eff. Aug. 13, 2009).

conditions requiring submission of DNA specimens, states:

> "(a–5) Any person who was otherwise convicted of or received a disposition of court supervision for any other offense under the Criminal Code of 1961 or who was found guilty or given supervision for such a violation under the Juvenile Court Act of 1987, *may, regardless of the sentence imposed, be required by an order of the court to submit specimens* of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section." (Emphasis added.) 730 ILCS 5/5–4–3(a–5) (West 2008).

This section thus gives the trial court discretion, in situations not otherwise covered by the statute, to order a defendant's DNA to be taken and entered into the registry. Thus, for example, a defendant whose original DNA sample was expunged, regardless of whether he was in custody, on probation, or under court supervision for a subsequent conviction, could be ordered by the court to submit a new sample.

Indeed, the statute is comprehensive in providing for other potentialities which might prevent a required DNA sample from being obtained, analyzed and indexed. See 730 ILCS 5/5–4–3(i)(2) (West 2008) ("In the event that a person's DNA sample is not adequate for any reason, the person shall provide another DNA sample for analysis."). Finally, in what has been referred to as a "failsafe" provision, section 5–4–3(l) states:

> "The failure of a person to provide a specimen, or of any person or agency to collect a specimen, within the 45 day period shall in no way alter the obligation of the person to submit such specimen, or the authority of the Illinois Department of State Police or persons designated by the Department to collect the specimen, or the authority of the Illinois Department of State Police to accept, analyze and maintain the specimen or to maintain or upload results of genetic marker grouping analysis information into a State or national database." 730 ILCS 5/5–4–3(l) (West 2008).

Accordingly, we are confident that the DNA of an individual which is required by the statute to be on file will, through some method set

forth therein, be continuously maintained in the database. Moreover, we find that while it is logical to conclude that the legislature's intent in creating section 5–4–3 was to build a DNA database with as comprehensive a population of qualifying offenders as possible, it is illogical to conclude that the statute requires duplicative samples and fees.

Given this finding, we reject the notion mentioned in *Grayer*, 403 Ill. App. 3d at 798, that the desire to have fresh samples of DNA justifies requiring the submission of multiple and duplicative samples from an offender who has already satisfied the statute by submitting DNA samples pursuant to a prior conviction. "Samples of DNA can remain viable for thousands of years if maintained under appropriate conditions. See P. Tracy & V. Morgan, *Big Brother and His Science Kit: DNA Databases for 21st Century Crime Control?*, 90 J. Crim. L. & Criminology 635, 673 n.105 (2000)." *Rigsby*, 405 Ill. App. 3d at 920. There is therefore no practical need for multiple samples, a fact which is evinced in this case by a letter from the Illinois Department of State Police to defense counsel. The letter indicates that while defendant was convicted of qualifying felonies in both 2002 and 2005: "The Illinois State Police DNA Indexing Laboratory has one sample on file. This sample was collected by Vandalia Correctional Center on November 19, 2002 and received at our laboratory on November 20, 2002." Having already obtained, analyzed and included defendant's DNA in the database in 2002, there was no purpose in repeating these actions in 2005, and there was similarly no purpose for the trial court in the case at bar to order another sample to be taken and analyzed.

Finally, we reject the State's argument that defendant herein forfeited this issue by failing to raise it in a postsentencing motion. Defendant's contention on appeal is that the trial court exceeded its statutory authority in ordering him to pay the DNA analysis fee and that therefore the order is void. A challenge to an alleged void order is not subject to forfeiture. *Rigsby*, 405 Ill. App. 3d at 920 (citing *People v. Arna*, 168 Ill. 2d 107, 113 (1995) (a sentence which does not conform to a statutory requirement is void and a reviewing court has the authority to correct it at any time)).

CONCLUSION

Based upon the foregoing, we determine that section 5–4–3 authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee only where that defendant is not currently registered in the DNA database. We therefore reverse the appellate court's judgment, and vacate that portion of the trial court's order requiring defendant to submit an additional DNA sample and requiring him to pay the $200 DNA analysis fee. We affirm defendant's conviction in all other respects.

Appellate court judgment reversed;
circuit court judgment vacated in part and affirmed in part.