# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Martino*, 2012 IL App (2d) 101244

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS F. MARTINO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1244 |
| Filed | June 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed defendant's conviction for aggravated domestic battery arising from an altercation between defendant and his wife in which her arm was broken when defendant fell on her after being tased by the police, since the State could not prove that the broken arm was caused by defendant's voluntary act. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CF-2791; the Hon. Kathryn E. Creswell, Judge, presiding. |
| Judgment | Affirmed as modified in part, reversed in part, and vacated in part. |

Counsel on
Appeal

Thomas A. Lilien and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1   On November 8, 2008, defendant, Thomas F. Martino, and his wife, Carmen Keenon, got into an argument, and, when police responded, they observed defendant on top of Keenon on the stair landing outside of the couple's apartment. The officers ordered defendant to get off of Keenon, defendant refused to comply with the officers' orders, the officers tased defendant, and defendant fell on Keenon's arm, breaking it. Defendant was taken into custody and never posted bond. Subsequently, defendant was charged with, among other things, aggravated domestic battery and aggravated battery (see 720 ILCS 5/12-3.3(a), 12-4 (West 2008)). In both of these counts defendant was charged with knowingly causing great bodily harm to Keenon when he broke her arm. The trial court found defendant guilty of aggravated domestic battery, aggravated battery, unlawful restraint (720 ILCS 5/10-3 (West 2008)), and two counts of resisting or obstructing a police officer (720 ILCS 5/31-1 (West 2008)). The aggravated battery conviction merged into the conviction of aggravated domestic battery, and defendant was sentenced to concurrent terms totaling 180 days in jail and 4 years of probation. In fashioning the sentence, the court ordered defendant to pay various fines and fees. Included in these fines and fees were multiple Violent Crime Victims Assistance Fund fines, document storage fees, court automation fees, circuit court clerk fees, court security fees, County Jail Medical Costs Fund fees, court finance fees, State's Attorney's assessments, drug court/mental health court fines, and Children's Advocacy Center fines, as well as a single anti-crime program fine. Although the court gave defendant credit against his sentence for the time he served in presentencing custody, the court did not give defendant credit against his fines for the time he served in custody. On appeal, defendant claims that he was not proved guilty beyond a reasonable doubt of aggravated domestic battery, that he is entitled to a credit against his fines of $5 for each day he served in presentencing custody, that various fines and fees may not be imposed on every conviction, and that his Violent

-2-

Crime Victims Assistance Fund fines must be reduced to comply with the statute. For the reasons that follow, we reverse defendant's conviction of and sentence for aggravated domestic battery, award defendant credit against his fines for the time he served in presentencing custody, vacate some of the fines and fees imposed, and reduce defendant's Violent Crime Victims Assistance Fund fines.

¶ 2                                    I. BACKGROUND

¶ 3        On the evening of November 7, 2008, defendant and Keenon, who lived in a second-floor apartment in downtown Wheaton, went out for drinks and dinner in downtown Wheaton. At around midnight, the couple was walking home when defendant fell into a pile of leaves. Keenon testified that defendant did not fall into the leaves because he was intoxicated. Rather, Keenon believed that defendant was playing around, enjoying the last nice fall day of the year.

¶ 4        When Keenon was unable to get defendant out of the pile of leaves, she threw her wedding ring at him and walked home. A neighbor saw defendant in the leaves and helped defendant walk back to the couple's apartment. After the neighbor left, Keenon asked defendant if he picked up her wedding ring before he came home. Defendant, who was angry at Keenon for throwing her ring, grabbed Keenon by the throat and shoved her down the stairs outside of the couple's apartment. Keenon landed on the first small landing of the stairs, with her head resting on the first stair leading up to the couple's apartment. As she lay in this position, defendant, who was on top of her, began using a great amount of force to choke her. Keenon, who believed that she was going to die, threw up as defendant was choking her.

¶ 5        The police were called, and, when they arrived, they ordered defendant to get off of Keenon, who was asking for help and crying. Defendant, who was no longer choking Keenon, explained to the police that Keenon was throwing up and that he was trying to help her. The police ordered defendant to get off of Keenon, telling him that they would help her. Defendant replied, in a combative tone, "[Y]ou ain't going to fucking do anything." The police again told defendant to get off of Keenon and come down the stairs and that, if he did not comply, he would be tased. After the police repeated these orders several more times and began moving up the stairs toward defendant, defendant stood up, moved to the front of the landing, and "squared off" against the police in a way that indicated that he wanted to fight. Defendant then took "an aggressive stance," clenching his fists and placing his hands down at his sides. While standing in this position, defendant yelled at the police, "Come on."

¶ 6        At this point, one of the officers tased defendant. Defendant dropped to the ground, having lost control of his muscles because of being tased. Defendant fell backward on top of Keenon, who had not moved since the police arrived. When defendant fell, Keenon heard a "crunch." Although Keenon did not initially feel any pain in her arm when defendant landed on her, she learned later that defendant broke her elbow when he fell on it.

¶ 7        At the close of the State's case, defendant moved for a directed finding, arguing, among other things, that he should not be found guilty of battering Keenon, because Keenon's arm was broken as a result of his involuntary act of collapsing on Keenon after the police tased

him. The trial court denied the motion.

¶ 8 After the trial court ruled on defendant's motion for a directed finding, defendant rested. The trial court found defendant guilty on all counts, and defendant moved for a new trial. The trial court denied the motion and sentenced defendant. In imposing the sentence, the court gave defendant credit against his sentence for the time he served in presentencing custody, but the court did not give defendant credit against his fines for that time. Additionally, the court imposed four document storage fees, four court automation fees, four circuit clerk fees, four court security fees, four County Jail Medical Costs Fund fees, four court finance fees, four State's Attorney's assessments, four Violent Crime Victims Assistance Fund fines, four drug court/mental health court fines, and four Children's Advocacy Center fines, as well as an anti-crime program fine.[1] When the court imposed the Violent Crime Victims Assistance Fund fines, it calculated the amounts of those fines as if no other fines were imposed. See 725 ILCS 240/10(c) (West 2008). Defendant never argued that any of the fines or fees imposed were incorrect or that he was entitled to credit against his fines for the time he served in presentencing custody. This timely appeal followed.

¶ 9                              II. ANALYSIS

¶ 10 On appeal, defendant essentially raises two issues. He argues that (1) he was not proved guilty beyond a reasonable doubt of aggravated domestic battery and (2) his fines and fees must be amended so that they are charged as authorized by statute with a credit against his fines for the time he served in presentencing custody. We address each of these contentions in turn.

¶ 11                            A. Reasonable Doubt

¶ 12 The first issue we consider is whether defendant was proved guilty beyond a reasonable doubt of aggravated domestic battery. The United States Constitution requires that a defendant may not be convicted of a crime unless the State establishes beyond a reasonable doubt *every* fact necessary to constitute the crime with which the defendant was charged. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). When a defendant asserts that the evidence is insufficient to sustain a conviction, the task of the reviewing court is to decide " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

---

[1]Although defendant was convicted of five offenses, the trial court imposed only four of each of the charges because the aggravated battery conviction was vacated when it was merged into the conviction of aggravated domestic battery. See *People v. Jones*, 337 Ill. App. 3d 546, 555 (2003) (citing *People v. Kargol*, 219 Ill. App. 3d 66, 75 (1991)).

¶ 13     Every offense is comprised of both a voluntary act and a mental state. See *People v. Douglas*, 381 Ill. App. 3d 1067, 1073 (2008). A defendant who commits a voluntary act is held accountable for his act, but a defendant is not criminally liable for an involuntary act. See *People v. Grant*, 71 Ill. 2d 551, 558 (1978). Involuntary acts are those that "occur as bodily movements which are not controlled by the conscious mind." *Id.* Examples of involuntary acts include those acts performed while a defendant is convulsing, sleeping, unconscious, under hypnosis, or seizuring. *Id.* Acts that result from a reflex or that "are not a product of the effort or determination of [the defendant], either conscious or habitual," are also considered involuntary acts for which the defendant cannot be held accountable. 1 Wayne R. LaFave, Substantive Criminal Law § 6.1(c), at 426 (2d ed. 2003).

¶ 14     Here, defendant was convicted pursuant to section 12-3.3(a) of the Criminal Code of 1961 (720 ILCS 5/12-3.3(a) (West 2008)), which provides, in pertinent part, that "[a] person who, in committing a domestic battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated domestic battery." Thus, a defendant can be guilty of aggravated domestic battery only if his voluntary act "causes great bodily harm, or permanent disability or disfigurement." *Id.*

¶ 15     Given the circumstances of this case, we cannot conclude that the State proved beyond a reasonable doubt that defendant's voluntary act resulted in Keenon's broken arm. Specifically, although the evidence revealed that defendant defied the police and that, because of this defiance, the police tased him, the evidence also established that the tasing of defendant rendered defendant incapable of controlling his muscles. See *Matta-Ballesteros v. Henman*, 896 F.2d 255, 256 n.2 (7th Cir. 1990) (noting that a Taser "sends an electric pulse through the body of the victim causing immobilization, disorientation, loss of balance, and weakness"). Because defendant was incapable of controlling his muscles, his act of falling on Keenon and breaking her arm was an involuntary act for which he cannot be held accountable. See *Grant*, 71 Ill. 2d at 558. Accordingly, we determine that defendant was not proved guilty beyond a reasonable doubt of aggravated domestic battery.

¶ 16                                   B. Fines and Fees

¶ 17     The next issue we address is whether defendant is entitled to credit against his fines for the time he served in presentencing custody and whether certain fines and fees were properly imposed. Before considering the substance of these issues, we observe that defendant never challenged in the trial court any of these fines and fees or whether he was entitled to presentencing credit against them. Defendant claims that he may take issue with these matters now. See *People v. Thompson*, 209 Ill. 2d 19, 27 (2004) (void order may be attacked at any time); *People v. Woodard*, 175 Ill. 2d 435, 457-58 (1997) (whether a defendant may receive $5-per-day credit toward his fines may be raised for first time on appeal). The State concedes that defendant may raise these issues for the first time on appeal. Accordingly, we address each of the challenged fines and fees and whether defendant is entitled to credit against his fines for the time he served in custody before sentencing.

¶ 18                                          1. Credit

¶ 19    First, we address whether defendant is entitled to a $5-per-day credit against his fines. Section 110-14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14(a) (West 2008)) delineates under what circumstances a defendant is entitled to presentencing credit. Specifically, section 110-14(a) provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." *Id.*

¶ 20    Here, defendant was in custody for 381 days. Thus, defendant is entitled to a maximum credit of $1,905 against those fines to which section 110-14(a) applies.

¶ 21    In his brief, defendant discusses whether, given that his aggravated domestic battery conviction has been reversed, the credit may be applied to satisfy the remaining three $10 drug court/mental health court fines, three $30 Children's Advocacy Center fines, one $100 anti-crime program fine, and $60 in Violent Crime Victims Assistance Fund fines. See *People v. Murdock*, 321 Ill. App. 3d 175, 177 (2001) (noting that, when a conviction is reversed, any fines imposed on the conviction no longer exist). Because whether defendant is entitled to this offset presents a question of law, our review is *de novo. People v. Andrews*, 365 Ill. App. 3d 696, 698 (2006).

¶ 22    As section 110-14(a) makes clear, a defendant is entitled to a $5 credit against certain fines for each day that he served in presentencing custody. Our supreme court has concluded that a drug court/mental health court assessment, though labeled a fee (see 55 ILCS 5/5-1101(d-5) (West 2008)), is, in actuality, a fine subject to the monetary credit. *People v. Graves*, 235 Ill. 2d 244, 255 (2009). Likewise, courts have found that Children's Advocacy Center assessments (55 ILCS 5/5-1101(f-5) (West 2008)) and anti-crime program assessments (730 ILCS 5/5-6-3(b)(12) (West 2008)) are fines subject to the monetary credit. See *People v. Maldonado*, 402 Ill. App. 3d 411, 435-36 (2010) (Children's Advocacy Center charge is a fine subject to the monetary credit); *People v. Dowding*, 388 Ill. App. 3d 936, 948 (2009) (anti-crime program assessment is a fine subject to the monetary credit). Unlike these fines, Violent Crime Victims Assistance Fund charges are not subject to the credit. See 725 ILCS 240/10(b), (c) (West 2008) (providing that Violent Crime Victims Assistance Fund fine is not subject to credit). But see *People v. Dickey*, 2011 IL App (3d) 100397, ¶ 32 (providing, without any discussion, that Violent Crime Victims Assistance Fund fine is subject to credit). Accordingly, the three $10 drug court/mental health court fines, three $30 Children's Advocacy Center fines, and one $100 anti-crime program fine, which fines total $220, may be fully credited by the time defendant served in custody before sentencing.


¶ 23                                    2. Multiple Fines and Fees

¶ 24    Second, we consider whether the trial court could impose multiple document storage fees (705 ILCS 105/27.3c (West 2008)), court automation fees (705 ILCS 105/27.3a (West 2008)), circuit clerk fees (705 ILCS 105/27.2(w) (West 2008)), court security fees (55 ILCS 5/3-6023 (West 2008)), County Jail Medical Costs Fund fees (730 ILCS 125/17 (West

-6-

2008)), court finance fees (55 ILCS 5/5-1101(d-5) (West 2008)), State's Attorney's fees (55 ILCS 5/4-2002 (West 2008)), Violent Crime Victims Assistance Fund fines (725 ILCS 240/10 (West 2008)), and drug court/mental health court fines (55 ILCS 5/5-1101 (West 2008)). Citing *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 22, defendant claims that only one of each of these types of charges could be imposed against him. The State agrees. However, at least in part, we disagree. See *People v. Horrell*, 235 Ill. 2d 235, 241 (2009) (reviewing court is not bound by parties' concessions). Not only does *Alghadi* reach this result without any type of analysis, but an examination of the statutes or ordinances that authorize the imposition of these assessments reveals that some of these charges may be imposed multiple times in one case.

¶ 25    In addressing whether the statutes or ordinances that authorize the imposition of these charges allow for the imposition of multiple charges, we begin by reciting the well-settled rules of statutory construction, which also apply to construing ordinances. See *Ruisard v. Village of Glen Ellyn*, 406 Ill. App. 3d 644, 661 (2010). The primary objective in construing a statute or ordinance is to ascertain and give effect to the legislative authority's intent. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). The surest and most reliable indicator of this intent is the language of the statute or ordinance itself. *Id.* We must construe the statute or ordinance as a whole, giving the language its plain and ordinary meaning. *Id.* In doing so, when the language is clear and unambiguous, we must apply the statute or ordinance without resorting to any extrinsic aids of construction. *Id.*

¶ 26    On the other hand, if the language in the statute or ordinance is susceptible to being interpreted in more than one way by reasonably well-informed people, the statute or ordinance is ambiguous. *Id.* In such instances, a court may consider extrinsic aids of construction in discerning the legislative authority's intent. *Id.* We must construe the statute or ordinance to avoid rendering any part of it meaningless or superfluous. *Id.* Additionally, we cannot view words and phrases in isolation, but, rather, we must consider them in light of other relevant provisions. *Id.* at 292-93. We may also consider the consequences that would result from construing the statute or ordinance one way or the other, and, in doing so, we must presume that the legislative authority did not intend absurd, inconvenient, or unjust consequences. *Id.* at 293. We review *de novo* whether the statutes or ordinances at issue allow for the imposition of multiple fines or fees. *Id.* at 292 (construction of statute reviewed *de novo*); *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9 (2001) (construction of ordinance reviewed *de novo*).

¶ 27    With these principles in mind, we turn to the fines and fees at issue here.


¶ 28                    a. Document Storage and Court Automation Fees

¶ 29    Sections 27.3(a) and 27.3(c) of the Clerk of Courts Act (Clerks Act) (705 ILCS 105/27.3(a), (c) (West 2008)) provide that the county board may enact ordinances to defray the costs of maintaining automated recordkeeping systems and document storage. The Du Page County board enacted such ordinances, which both provide, in pertinent part, that the applicable $15 fees "shall be paid *** by the defendant in any felony, misdemeanor, traffic, ordinance, or conservation *matter* on a judgment of guilty." (Emphasis added.)

Du Page County Code § 9-10 (eff. June 13, 2006); Du Page County Code § 9-30 (eff. Jan. 1, 2006).

¶ 30    Recently, in *People v. Pohl*, 2012 IL App (2d) 100629, this court considered whether multiple document storage and court automation fees may be imposed in a single case. There, in construing what was meant by "matter," we stated that "[i]n legal usage, the word 'matter' can be used either as a synonym for 'case' or to refer to an allegation in a pleading." *Id.* ¶ 21. We determined that "it seems fairly clear that the former sense was intended, as one does not normally speak of one charged with a crime as the defendant 'in' an allegation." *Id.* "Because there was but one case [in *Pohl*], only one of each fee [could] be imposed for that case even though [the defendant was convicted of three counts of domestic battery]." *Id.* ¶¶ 1, 21. We observed that "[h]ad the Du Page County board intended to impose the fees for each conviction, it easily could have incorporated language to that effect in the ordinances." *Id.* ¶ 21. Given that, in line with *Pohl*, only one document storage fee and one court automation fee may be imposed in one case, we vacate two of the $15 court automation fees and two of the $15 document storage fees imposed against defendant.

¶ 31                              b. Circuit Clerk Fees

¶ 32    The trial court here imposed a $125 circuit clerk fee on defendant's conviction of unlawful restraint. The court imposed $75 circuit clerk fees on defendant's two convictions of resisting or obstructing a police officer.

¶ 33    Section 27.2(w) of the Clerks Act (705 ILCS 105/27.2(w) (West 2008)) dictates the fees that may be assessed in criminal and quasi-criminal cases. Specifically, as relevant here, it states:

> "(1) The clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted or sentenced to supervision therein as follows:
>
> > (A) Felony complaints, a minimum of $80 and a maximum of $125.
> >
> > (B) Misdemeanor complaints, a minimum of $50 and a maximum of $75." 705 ILCS 105/27.2(w)(1)(A), (w)(1)(B) (West 2008).

¶ 34    In *Pohl*, we noted that the plain language of section 27.2(w)(1), to which we must defer, authorizes the imposition of one fee per complaint.[2] *Pohl*, 2012 IL App (2d) 100629, ¶ 9. This fee is between $80 and $125 for a defendant convicted pursuant to a felony complaint and $50 and $75 for a defendant convicted pursuant to a misdemeanor complaint. The problem in this case is that the complaint filed against defendant was not purely a felony or misdemeanor complaint. Rather, pursuant to section 111-4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-4 (West 2008)), the State properly joined in one indictment both felonies and misdemeanors. See 720 ILCS 5/10-3(b) (West 2008) (unlawful restraint is a Class 4 felony); 720 ILCS 5/31-1(a) (West 2008) (resisting or obstructing a

_____

[2]The term "complaints" used in section 27.2(w)(1) refers to charging instruments, as the State may not charge a defendant with a felony pursuant to a complaint. See 725 ILCS 5/111-2(a) (West 2010) ("All prosecutions of felonies shall be by information or indictment.").

police officer, where the officer is not injured because of such obstruction or resistance, is a Class A misdemeanor).

¶ 35 The question with which we are left is, when misdemeanors and felonies are brought in a multiple-count complaint, which fee, *i.e.*, the clerk fee imposed for a felony complaint or the clerk fee imposed for a misdemeanor complaint, should be assessed? Neither the parties nor this court has found any authority shedding light on this issue. That said, logic dictates that a complaint setting out a felony is a felony complaint even if it also sets out a misdemeanor. Thus, we vacate all but the $125 fee.

¶ 36 c. Court Security Fees

¶ 37 Section 5-1103 of the Counties Code (55 ILCS 5/5-1103 (West 2008)) authorizes a county board to enact an ordinance to defray the costs of the sheriff in providing court security. Pursuant to that section of the Counties Code, the Du Page County board enacted an ordinance that permits the imposition of a court security fee in cases like this one. See Du Page County Code § 20-30 (eff. Nov. 14, 2007). Specifically, that ordinance provides, in relevant part:

> "In criminal, local ordinance, [c]ounty ordinance, traffic and conservation *cases*, such fee [of $25] shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty resulting in a judgment of conviction or order of supervision." (Emphasis added.) *Id.*

¶ 38 In *Pohl*, we observed that "[t]he plain language of section 20-30 of the Du Page County Code, to which we must defer [citation], indicates that a $25 court security fee must be imposed against a defendant who is found guilty in a criminal case." *Pohl*, 2012 IL App (2d) 100629, ¶ 12. We noted that "[t]he language refers to *cases*, not individual convictions." (Emphasis in original.) *Id.* Thus, only one $25 fee may be imposed in each case. *Id.* Accordingly, here, as in *Pohl*, we vacate two of the $25 court security fees imposed against defendant.

¶ 39 d. County Jail Medical Costs Fund Fees

¶ 40 Section 17 of the County Jail Act (Jail Act) (730 ILCS 125/17 (West 2008)) provides:

> "The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty offense or business offense."

¶ 41 The clear and unambiguous language of this portion of section 17 of the Jail Act provides that a $10 fee may be imposed on *each* one of a defendant's *convictions*. See *Marshall*, 242 Ill. 2d at 297 (noting, in discussion of whether multiple DNA fees could be imposed, the legislature has allowed for the imposition of multiple fees in other contexts, like on a per-conviction basis in cases where a County Jail Medical Costs Fund fee is imposed). Given that a County Jail Medical Costs Fund fee may be imposed on a per-conviction basis, we determine that the imposition of three $10 fees here was proper.

¶ 42                              e. Court Finance Fees

¶ 43        Section 5-1101 of the Counties Code (55 ILCS 5/5-1101 (West 2008)) allows county
boards to enact ordinances that allow for the imposition of various fees to defray the costs
of financing a court system. Sections 5-1101(c)(1) and (c)(2) provide that a county board
may, by ordinance, provide for:

    "A fee to be paid by the defendant on a judgment of guilty or a grant of supervision ***
    as follows:

            (1) for a felony, $50;

            (2) for a class A misdemeanor, $25[.]" 55 ILCS 5/5-1101(c)(1), (c)(2) (West
    2008).

Pursuant to section 5-1101, the Du Page County board enacted Du Page County Code § 9-21
(eff. Jan. 1, 2006), which provides for such fees.

¶ 44        Under the plain language of section 5-1101 of the Counties Code, to which we must defer
(see *People v. Elcock*, 396 Ill. App. 3d 524, 538 (2009)), a court finance fee, like a County
Jail Medical Costs Fund fee, may be imposed on a per-conviction basis. Here, as noted
above, defendant was convicted of one felony and two Class A misdemeanors. Accordingly,
the one $50 court finance fee imposed on the felony conviction and the two $25 court finance
fees imposed on the two misdemeanor convictions were proper.


¶ 45                              f. State's Attorney's Fees

¶ 46        In this case, the trial court imposed one $30 State's Attorney's fee on the felony
conviction and two $10 State's Attorney's fees on the misdemeanor convictions. Section 4-
2002 of the Counties Code (55 ILCS 5/4-2002 (West 2008)) governs what State's Attorney's
fees may be imposed in various cases. Specifically, it states:

    "For each conviction in prosecutions on indictments for first degree murder, second
    degree murder, involuntary manslaughter, criminal sexual assault, aggravated criminal
    sexual assault, aggravated criminal sexual abuse, kidnapping, arson and forgery, $30. All
    other cases punishable by imprisonment in the penitentiary, $30.

    For each conviction in other cases tried before judges of the circuit court, $15; except
    that if the conviction is in a case which may be assigned to an associate judge, whether
    or not it is in fact assigned to an associate judge, the fee shall be $10." 55 ILCS 5/4-
    2002(a) (West 2008).

¶ 47        Section 4-2002 provides that a State's Attorney's fee, like the County Jail Medical Costs
Fund fee and the court finance fee, may be charged on a per-conviction basis. Thus, the
imposition of three fees was proper.[3]

---

[3]The parties make no argument concerning the amount of each fee imposed. We mention that
the imposition of three $30 fees would have been improper, as defendant was not subject to
imprisonment in a penitentiary based on his convictions of the two misdemeanors. See 720 ILCS 5/2-
11 (West 2008) (" 'Misdemeanor' means any offense for which a sentence to a term of imprisonment
in other than a penitentiary for less than one year may be imposed.").

¶ 48                          g. Drug Court/Mental Health Court Fines

¶ 49    Section 5-1101(d-5) of the Counties Code provides that county boards may enact by ordinance:

> "A $10 fee to be paid by the defendant on a judgment of guilty or a grant of supervision *** to be placed in the county general fund and used to finance the county mental health court, the county drug court, or both." 55 ILCS 5/5-1101(d-5) (West 2008).

¶ 50    Pursuant to this section of the Counties Code, the Du Page County board enacted an ordinance that provides for the imposition of a $10 drug court/mental health court fine for each "count" on which there was "a judgment of guilty." Du Page County Code Resolution FI-0089-07 (eff. June 26, 2007). Thus, because the $10 drug court/mental health court fine may be charged for each count on which defendant was found guilty, and because defendant was guilty of three counts, we determine that the imposition of three $10 drug court/mental health court fines was proper.


¶ 51                      h. Violent Crime Victims Assistance Fund Fines

¶ 52    The statute that authorizes a trial court to impose a Violent Crime Victims Assistance Fund fine provides, in relevant part:

> "(b) *** [T]here shall be an additional penalty collected from each defendant upon conviction *** of $4 for each $40, or fraction thereof, of fine imposed. ***

> (c) When any person is convicted in Illinois *** of an offense listed below *** and no other fine is imposed, the following penalty shall be collected by the Circuit Court Clerk:

>> (1) $25, for any crime of violence as defined in subsection (c) of Section 2 of the Crime Victims Compensation Act; and

>> (2) $20, for any other felony or misdemeanor, excluding any conservation offense." 725 ILCS 240/10(b), (c) (West 2008).

¶ 53    Here, as indicated above, the trial court imposed many fines in addition to the Violent Crime Victims Assistance Fund fines. Thus, it was improper for the court to charge defendant a $25 Violent Crime Victims Assistance Fund fine on the aggravated domestic battery conviction, which conviction we reverse, and $20 on each of the three other convictions.

¶ 54    That said, however, in reading the various portions of the statute in tandem, we determine that it is proper to assess on each one of defendant's three convictions a Violent Crime Victims Assistance Fund fine of $4 for each $40 or fraction thereof of other fines imposed. See *People v. Anderson*, 402 Ill. App. 3d 186, 194 (2010) (a Violent Crime Victims Assistance Fund fine was imposed on each one of the defendant's two convictions). According to defendant, he was assessed $220 in other fines, which includes the drug court/mental health court fines, the Children's Advocacy Center Fund fines, and the anti-crime program fine. Of this amount, $40 in fines was imposed on the unlawful restraint conviction, $140 in fines was imposed on the first resisting-a-peace-officer conviction, and

$40 in fines was imposed on the second resisting-a-peace-officer conviction. Thus, accepting that no other assessment may be characterized as a fine, the amount of the Violent Crime Victims Assistance Fund fine for the first resisting-a-peace-officer conviction should be $16, as $140 divided by $40 is 3.5, and 4 (which represents each $40 in fines *or fraction thereof*) multiplied by $4 is $16. See *People v. Long*, 398 Ill. App. 3d 1028, 1034 (2010), *abrogated on other grounds by People v. Burney*, 2011 IL App (4th) 100343, ¶¶ 97-99. Following this same process for the other convictions, we impose a $4 fine on the unlawful restraint conviction and a $4 fine on the second resisting-a-peace-officer conviction.

¶ 55                                3. Summary of Fines and Fees

¶ 56       In conclusion, we determine that defendant is entitled to a credit of $220 against his fines for the time he served in custody before sentencing. Defendant is also entitled to the vacation of (1) two document storage fees (which equal $30); (2) two court automation fees (which equal $30); (3) two circuit clerk fees (which equal $150); and (4) two court security fees (which equal $50). The imposition of multiple County Jail Medical Costs Fund fees, court finance fees, State's Attorney's fees, and drug court/mental health court fines was proper. Moreover, we vacate the $60 in Violent Crime Victims Assistance Fund fines the trial court assessed and impose three Violent Crime Victims Assistance Fund fines of $4, $16, and $4.

¶ 57                                     III. CONCLUSION

¶ 58       For the above-stated reasons, the judgment of the circuit court of Du Page County is affirmed as modified in part, reversed in part, and vacated in part.

¶ 59       Affirmed as modified in part, reversed in part, and vacated in part.