2016 IL App (1st) 143083

No. 1-14-3083

Filed March 31, 2016

FIFTH DIVISION

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, INC., | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 11  CH  31612 |
| KNOX COUNTY EMS, INC., a Corporation, and CHAD | ) | |
| STEPHENS, Guardian of the Person and Estate of Stacy | ) | |
| Stephens, | ) | Honorable |
| | ) | Moshe Jacobius, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Knox County EMS, Inc. (Knox) appeals from the circuit court's orders granting summary judgment to plaintiff Continental Western Insurance Company, Inc. (Continental) on its declaratory judgment action against Knox and denying Knox's motion to reconsider. Continental had issued a workers' compensation policy to Knox. It sought a ruling that, under the policy, it had no duty to defend Knox against or pay benefits on an Illinois workers' compensation claim brought against Knox by a Knox employee. The circuit court

agreed with Continental that the policy did not cover Illinois workers' compensation claims. It held that Illinois law required Knox to purchase separate workers' compensation insurance coverage for its operations in Illinois and Knox, therefore, had not met the conditions for coverage in the policy's residual market limited other states insurance endorsement. The questions on appeal are whether the circuit court (1) should have dismissed the action as the Illinois Workers' Compensation Commission[1] (commission) had primary jurisdiction over the action and (2) erred in finding that section 4(a)(3) of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/4(a)(3) (West 2012)) required Knox to purchase separate workers' compensation insurance coverage for its Illinois claim. We reverse and remand.[2]

¶ 2                                                    BACKGROUND

¶ 3        Knox is a provider of ambulance services. Its regular place of business is Indiana but its drivers also make trips into Illinois to pick up patients and take them to Indiana for treatment. Stacy Stephens lived in Indiana and was employed in Indiana by Knox as an emergency medical technician. On September 29, 2010, while in Illinois to pick up a patient for Knox, Stacy was seriously injured in a car accident. Chad Stephens, Stacy's husband and guardian, filed workers' compensation claims on her behalf against Knox in both Indiana and Illinois. Only the Illinois claim is relevant on appeal.

¶ 4        Knox tendered defense of the Illinois claim to Continental. Knox held a workers' compensation insurance and general liability policy issued by Continental for the period from

---

[1] The parties refer to the Illinois Industrial Commission. Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." 820 ILCS 305/1(c) (West 2004). Accordingly, we will use that name.

[2] This case was originally assigned to Justice Palmer and filed as a Rule 23 order. Ill. S. Ct. R. 23 (eff. July 1, 2011). Subsequent to Justice Palmer's departure from the court, a motion to publish was granted. Justice Gordon has been replaced as the authoring judge. He has reviewed the case and concurs in the result. Presiding Justice Reyes and Justice Lampkin, also having reviewed the opinion, continue to concur.

February 2010 to February 2011. The policy provided in section 3.A of the "Information Page" that Continental would promptly pay the benefits required of Knox by the workers' compensation law of the state of Indiana.

¶ 5 In a "Residual Market Limited Other States Insurance Endorsement" (other states endorsement), the policy also provided for payment of workers' compensation benefits due under the laws of states other than Indiana, but only if certain conditions were met. The endorsement provided:

"We will pay promptly when due the benefits required of you [Knox] by the workers' compensation law of any state not listed in Item 3.A of the Information Page [*i.e.*, any state other than Indiana] if all of the following conditions are met:

a. The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A of the Information Page or was, at the time of injury, primarily employed in a state listed in Item 3.A of the Information Page; and

b. The employee claiming benefits is not claiming benefits in a state where, at the time of injury, (i) you have other workers' compensation insurance coverage, or (ii) you were, by virtue of the nature of your operations in that state, required by that state's law to have obtained separate workers' compensation insurance coverage, or (iii) you are an authorized self-insurer or participant in a self-insured group plan; and

c. The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary."

The endorsement carried the warning that, if the insured began operations in any state not listed in section 3.A of the information page, *i.e.*, in any state other than Indiana, it "should do whatever may be required under that state's law, as this endorsement does not satisfy the requirements of that state's workers' compensation law."

¶ 6        Continental defended Knox on the claim under a reservation of rights. It filed a declaratory judgment action against Knox and Stephens in the circuit court of Cook County, seeking a ruling that it had no duty to defend Knox on the Illinois claim or to pay on Knox's behalf any benefits due on the claim. Continental argued that, pursuant to section 3.A of the policy information page, the policy only applied to workers' compensation claims filed in Indiana or alternatively, coverage for claims filed in other states were covered only to the extent of coverage available under Indiana law.

¶ 7        Continental also argued that the "other states" endorsement did not provide coverage for the Illinois claim as Knox could not meet the condition set forth in subparagraph A.1.b of the endorsement. This condition provided that the employee could not be claiming benefits in a state where, at the time of injury, Knox was, by virtue of the nature of its operations in that state, "required by that state's law to have obtained separate workers' compensation insurance coverage." Continental asserted that Knox did not meet this condition as, pursuant to section 4(a)(3) of the Illinois Workers' Compensation Act, Knox was required to insure its entire liability in the State of Illinois, meaning that Illinois law required him to purchase separate workers' compensation insurance coverage for its liability in Illinois.[3]

---

[3] Section 4(a)(3) of the Act provides, in relevant part, that an employer must "[i]nsure his entire liability to pay such compensation in some insurance carrier authorized, licensed, or permitted to do such insurance business in this State. Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured ***." 820 ILCS 305/4(a)(3) (West 2012).

¶ 8        Continental also argued that Knox failed to meet the condition in subparagraph A.1.b of the endorsement, which required that "[t]he duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary." It asserted that Stacy was injured while performing work for Knox in Illinois that was not "temporary" given that Knox regularly performed such work in Illinois.

¶ 9        Knox and Continental filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Continental and against Knox. It agreed with Continental that section A.1.b of the other states endorsement excluded coverage for the Illinois claim because Knox, by virtue of its operations in Illinois, was required under section 4(a)(3) of the Act to have obtained separate Illinois workers' compensation insurance to cover its employees' claims filed in Illinois. The court stated that, "[a]bsent obtaining such Illinois coverage, the policy only covered Indiana claims."

¶ 10       The court noted that, as the parties had filed cross-motions for summary judgment, the question of whether Stacy was working in Illinois on a temporary basis was "not an issue of fact." It then held that, "[i]n any case, the Illinois Workers' Compensation Act requires separate workers' compensation insurance that covers all employees, whether permanent or temporary" and, "[t]herefore, Continental is correct that under Illinois law, coverage must be obtained for an employer's entire liability." The court concluded the other states endorsement excluded coverage of the Illinois claim as Knox could not meet the subparagraph A.1.b condition.

¶ 11       The court denied Knox's motion to reconsider but stayed its order pending additional briefing on the motion to reconsider. On September 30, 2014, after considering that briefing, the court lifted the stay and entered its order denying Knox's motion to reconsider. Knox filed a

timely notice of appeal from the court's orders.

¶ 12                              ANALYSIS

¶ 13        Knox raises two arguments on appeal. It first argues Stacy qualifies for Illinois workers'

compensation coverage under the policy because it insured its entire liability via the policy

endorsement and met all of the conditions for other states coverage in the endorsement. Knox

asserts the circuit court erred in holding that section 4(a)(3) of the Illinois Workers'

Compensation Act required Knox to purchase a separate Illinois workers' compensation policy

and that Knox therefore failed to meet the condition in subparagraph A.1.b of the endorsement.

Knox's second argument is that we must vacate the circuit court's ruling and direct the court to

dismiss the action as the construction of section 4(a) of the Act should be originally interpreted

by the commission, not by the circuit court of Cook County.

¶ 14                            1. Jurisdiction

¶ 15        Addressing the jurisdictional argument first, we find the circuit court did not err in

undertaking the interpretation of section 4(a) of the Act in deciding the coverage issue. Whether

the circuit court had subject matter jurisdiction to construe section 4(a) of the Act is a question of

law we review *de novo*. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL

111611, ¶ 26.

¶ 16        The question of the scope of the commission and the circuit court's jurisdiction over the

interpretation of a workers' compensation insurance policy was resolved by our supreme court in

*Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284 (1994). In *Skilling*, an employee had filed

workers' compensation claims against its employer for injuries which occurred in Illinois. *Id.* at

285. The employer's workers' compensation insurance carrier filed a declaratory action in the

circuit court of McHenry County. It argued it had no duty to defend or indemnify the employer

for injuries occurring in Illinois as its policy provided coverage only for injuries occurring in Wisconsin. The defendants moved to dismiss, arguing the insurer had failed to exhaust its remedies before the commission. The circuit court dismissed the action and the appellate court affirmed. The supreme court reversed and remanded, holding that the circuit court and the commission had concurrent jurisdiction to hear the disputed insurance coverage claim but the circuit court's jurisdiction was paramount over the question of law at issue in the action. *Id.* at 290.

¶ 17    The *Skilling* court stated the Illinois courts have original jurisdiction over all justiciable matters. *Id.* at 287. It explained that, although the legislature may vest exclusive original jurisdiction in an administrative agency, in order for a legislative enactment to divest the circuit courts of their original jurisdiction, "it must do so explicitly" through a comprehensive statutory administrative scheme. *Id*. The court found the pronouncement in the Act that " '[a]ll questions arising under this Act *** shall *** be determined by the Commission' " was insufficient to divest the circuit courts of jurisdiction over matters arising under the Act. *Id*. (quoting 820 ILCS 305/18 (West 1992)). It held that, instead, the circuit court and the commission had concurrent jurisdiction to hear disputes over insurance coverage. *Id*.

¶ 18    The court then turned to the question of whether the circuit court or the commission had primary jurisdiction over the coverage issue. Under the doctrine of primary jurisdiction, "a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards." *Id.* at 288-89. The court concluded that the circuit court should not have declined to resolve the insurance coverage dispute as the dispute presented questions of law that were "the particular province of the courts to resolve." *Id*. at 289. The court stated

"[a]dministrative agencies are given wide latitude in resolving factual issues but not in resolving matters of law." *Id*. The particular question before the circuit court was whether Illinois was included in the scope of coverage afforded by the provisions of the insurance policy. The court held that this was a question of law and, therefore, was a question which the circuit court, and not the commission, was in the best position to address. *Id*.

¶ 19 As in *Skilling*, the declaratory judgment action at bar solely concerns the scope of coverage afforded in a workers' compensation insurance policy. The construction of Continental's insurance policy is not a determination of the factual issues related to a determination of workers' compensation benefits, such as the nature or extent of the injury or the potential defenses to the workers' compensation claim. If it was, the circuit court would have no original jurisdiction in the case and the commission would have exclusive jurisdiction as it would be in a better position to draw on its special expertise to answer these questions. See *Bradley v. City of Marion*, *Illinois*, 2015 IL App (5th) 140267, ¶¶ 25, 32; *ABF Freight System, Inc. v. Fretts*, 2015 IL App (3d) 130663, ¶¶ 16-19 (citing *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 157-58 (1992)).

¶ 20 Similarly, the construction of the insurance policy does not concern factual determinations regarding whether the enforcement provisions of section 4 apply, such as whether an employment relationship existed, whether the employer was required to provide workers' compensation insurance or whether the employer knowingly or negligently failed to comply with that requirement. If it did, then again, the commission would have primary jurisdiction over the circuit court to determine these fact-intensive questions using its specialized knowledge and expertise. See *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 468 (2010).

¶ 21 Instead, the construction of the insurance policy presents a collateral issue governed by

principles of contract construction. *Bradley v. City of Marion, Illinois*, 2015 IL App (5th) 140267, ¶ 32. As such, following *Skilling*, the declaratory judgment action presents a question of law for the circuit court, not the commission, to determine. *Skilling*, 163 Ill. 2d at 289.

¶ 22    Knox argues, however, that the circuit court's jurisdiction is not primary here as, unlike in *Skilling*, the construction of the insurance policy presents a question as to the meaning of the statute itself. Knox claims that the phrase "insure his entire liability" in section 4(a)(3) is ambiguous as it is not defined in the Act and section 4(a) "does not state, suggest or infer whether an out of state employer who occasionally does business in Illinois is required to have a separate Illinois Workers' Compensation insurance policy." Knox contends that, therefore, the determination of what the legislature meant when it stated an employer is required to insure its "entire liability" requires the specialized knowledge of the commission.

¶ 23    The interpretation of section 4(a)(3) is a question of statutory interpretation, the primary objective of which is to determine and give effect to the intent of our legislature. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). The language of the statute is the surest and most reliable indicator of legislative intent and we afford that language its plain and ordinary meaning. *Id.* Where the statutory language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Id.* However, if the statute is ambiguous, then we may consider extrinsic aids of construction in order to discern the legislative intent. *Id.*

¶ 24    Knox points out that "[a] court will give substantial weight and deference to interpretations of ambiguous statutes by the administrative agency or body which is charged with the application and enforcement of the statute because 'courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise.' " *Cella v. Sanitary District Employees' & Trustees' Annuity & Benefit Fund*, 266 Ill. App. 3d 558, 563-64

(1994) (quoting *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152-53 (1983)). However, "an administrative agency's interpretation of a statute is only entitled to deference if the provision in question is *ambiguous*." (Emphasis in original.) *Id*. at 565. If the language in a statutory provision is plain and unambiguous, then it will be given effect as written. *Id*. The section 4(a)(3) phrase "[i]nsure his entire liability" (820 ILCS 305/4(a)(3) (West 2012)) is not ambiguous.

¶ 25　　　A statute will be deemed ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways. *Marshall*, 242 Ill. 2d at 292. A statute is not ambiguous merely because a term or phrase is undefined. When a phrase is undefined, we presume that the legislature intended the phrase to have its popularly understood meaning. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 20. We may employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase. *Id*.

¶ 26　　　Section 4(a) provides that an employer who does not self-insure to the satisfaction of the commission (820 ILCS 305/4(a)(1) (West 2010)), "[f]urnish security, indemnity or a bond guaranteeing the payment by the employer of the compensation provided for in this Act" (820 ILCS 305/4(a)(2) (West 2010)) or "[m]ake some other provision, satisfactory to the Commission, for the securing of the payment of compensation provided for in this Act" (820 ILCS 305/4(a)(4) (West 2010)), must "*[i]nsure his entire liability* to pay such compensation in some insurance carrier authorized, licensed, or permitted to do such insurance business in this State" (emphasis added) (820 ILCS 305/4(a)(3) (West 2010)).[4]

---

[4] Section 4(a) of the Act provides in full:
"(a) Any employer, *** who shall come within the provisions of Section 3 of this Act, and any other employer who shall elect to provide and pay the compensation provided for in this Act shall:
　　　　(1) File with the Commission annually an application for approval as a

¶ 27    Section 4(a)(3) requires an employer to "*[i]nsure his entire liability* to pay such compensation." (Emphasis added.) *Id.* "Entire" plainly means whole, complete and total. Black's Law Dictionary 553 (7th ed. 1999). A "liability" is a legal or a financial obligation. *Id.* at 925. In the context of section 4(a), "such compensation" is clearly the "compensation provided for in this Act" (820 ILCS 305/4(a), 4(a)(3), 4(a)(4) (West 2010)), *i.e.*, the Illinois workers' compensation benefits to which the employer's injured employee is entitled under the Act. Therefore, giving the phrase "insure his entire liability" its plain and ordinary meaning and reading it in context

self-insurer ***.

   If the sworn application and financial statement of any such employer does not satisfy the Commission of the financial ability of the employer who has filed it, the Commission shall require such employer to,

   (2) Furnish security, indemnity or a bond guaranteeing the payment by the employer of the compensation provided for in this Act ***, or

   (3) *Insure his entire liability* to pay such compensation in some insurance carrier authorized, licensed, or permitted to do such insurance business in this State. Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured: Provided, however, that any employer may insure his or her compensation liability with 2 or more insurance carriers or may insure a part and qualify under subsection 1, 2, or 4 for the remainder of his or her liability to pay such compensation, subject to the following two provisions:

      Firstly, the entire compensation liability of the employer to employees working at or from one location shall be insured in one such insurance carrier or shall be self-insured, and

      Secondly, the employer shall submit evidence satisfactorily to the Commission that his or her entire liability for the compensation provided for in this Act will be secured. Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void.

   Nothing herein contained shall apply to policies of excess liability carriage secured by employers who have been approved by the Commission as self-insurers, or

   (4) Make some other provision, satisfactory to the Commission, for the securing of the payment of compensation provided for in this Act, and

   (5) Upon becoming subject to this Act and thereafter as often as the Commission may in writing demand, file with the Commission in form prescribed by it evidence of his or her compliance with the provision of this Section." (Emphasis added.) 820 ILCS 305/4 (West 2010).

with the rest of section 4(a), there can be only one understanding of this phrase: the employer must carry insurance sufficient to cover its whole/complete/total legal obligation to pay the workers' compensation benefits to which its employee is entitled under the Act.

¶ 28      The phrase "insure his entire liability" is not ambiguous and the circuit court is more than capable of interpreting it without any need for the commission's expertise. Therefore, in the context of this declaratory judgment action, the circuit court's jurisdiction was primary. See *Country Mutual Insurance Co. v. D&M Tile, Inc.*, 394 Ill. App. 3d 729, 736 (2009) (circuit court correctly determined that it had jurisdiction over a declaratory judgment action involving an interpretation of a workers' compensation insurance policy and section 3(17)(b) of the Act (820 ILCS 305/3(17)(b) (West 2006)).

¶ 29      The dispute at bar, although triggered by Stephens' workers' compensation claim, is not itself a workers' compensation case. Instead, it concerns the separate question of how the financial burden to pay Stephens' workers' compensation award, if any, will be distributed. See *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873, ¶¶ 25-26. Specifically, the dispute concerns a question of contract interpretation: whether, under the insurance policy, Continental must pay the workers compensation benefits that Knox owes under the Illinois Act for Stacy's injuries. Although the interpretation of section 4(a) of the Act plays a part in the determination of whether Knox met the requirements of the other states policy endorsement, the action at bar concerns matters of contract and statutory interpretation that are collateral to the adjudication of Stephens' workers' compensation claim arising under the Act. As such, the declaratory judgment action presents questions of law for the circuit court, not the commission, to determine. The commission did not have primary jurisdiction to determine any matter raised in the dispute at bar. Accordingly, the circuit court did not err in deciding the

declaratory judgment action.

¶ 30                                    2. The Other States Endorsement

¶ 31        As the circuit court had jurisdiction to decide the declaratory judgment action, we turn to the main question at bar: whether Knox was, by virtue of the nature of its operations in Illinois, required by Illinois law to have obtained separate workers' compensation insurance coverage.

¶ 32        Under section A.1.b(ii) of the other states policy endorsement, Continental agreed to: "pay promptly when due the benefits required of [Knox] by the workers' compensation law of any state not listed in Item 3.A of the information Page [*i.e.*, of any state other than Indiana] if all of the following conditions are met:

                    * * *

            b. The employee claiming benefits is not claiming benefits in a state where, at the time of injury, *** (ii) [Knox was], by virtue of the nature of [its] operations in that state, required by that state's law to have obtained separate workers' compensation insurance coverage ***."[5]

If, as the circuit court found, section 4(a)(3) of the Illinois Workers' Compensation Act required Knox to obtain "separate" workers' compensation insurance coverage for the Illinois claim, then Knox could not comply with section A.1.b(ii) of the endorsement. As a result, the policy would not cover the Illinois claim and the circuit court properly granted summary judgment to Continental and against Knox.

¶ 33        Summary judgment is granted when " 'the pleadings, depositions, and admissions on file,

---

[5] In order for the other states endorsement to apply, two other conditions also had to be met: (1) the employee claiming benefits was either hired under a contract made in Indiana or, at the time of injury, was principally employed in Indiana and (2) "the duration of the work being performed by the employee claiming benefits in [Illinois]" was "temporary." The question of whether Knox met these conditions is not before us on appeal.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* ¶ 27 (quoting 735 ILCS 5/2-1005(c) (West 2010)). We review the circuit court's grant of summary judgment *de novo. Id. De novo* review is also appropriate as the case turns on the construction of provisions of the insurance policy and the Act, questions of law which we review *de novo*. *Id*. As noted previously, our primary objective in construing a statute is to give effect to the legislature's intent and the best indicator of legislative intent is the statutory language. *Id*. ¶ 28.

¶ 34        Section 4(a) of the Act provides that, in order to ensure the payment of workers' compensation benefits, any employer who comes within the provisions of section 3 of the Act must either: (1) self-insure its payment of any compensation due under the Act, (2) furnish security, indemnity or a bond guaranteeing its payment of such compensation, (3) insure its entire liability to pay such compensation, or (4) make some other provision that is satisfactory to the commission for securing of the payment of the compensation. 820 ILCS 305/4(a) (West 2010).

¶ 35        Knox admits in its briefs that it is an employer that comes within the provisions of section 3 of the Act and that it was required to insure its entire liability to pay workers' compensation benefits due under the Act pursuant to section 4(a)(3).[6] Section 4(a)(3) provides that, if an employer does not self insure or furnish security, indemnity or a bond guaranteeing its payment of the workers' compensation benefits or make some other provision that is satisfactory to the Commission for securing of the payment of the compensation," then the employer must:

        "(3) Insure his entire liability to pay such compensation in some insurance carrier

_____

[6] Section 3 provides that the Act's provisions apply automatically to all employers and their employees engaged in "[c]arriage by land," a business "declared to be extra hazardous." 820 ILCS 305/3(3) (West 2010).

authorized, licensed, or permitted to do such insurance business in this State. Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured: Provided, however, that any employer may insure his or her compensation liability with 2 or more insurance carriers or may insure a part and qualify under subsection 1, 2, or 4 for the remainder of his or her liability to pay such compensation, subject to the following two provisions:

Firstly, the entire compensation liability of the employer to employees working at or from one location shall be insured in one such insurance carrier or shall be self-insured, and

Secondly, the employer shall submit evidence satisfactorily to the Commission that his or her entire liability for the compensation provided for in this Act will be secured. Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void." 820 ILCS 305/4(a)(3) (West 2010).

¶ 36        Knox asserts that it complied with these requirements by contracting for coverage of its entire workers compensation liability with Continental, a carrier authorized and licensed to do business in Illinois. It argues the plain language of section 4(a)(3) does not require it to purchase separate workers' compensation insurance in Illinois to insure its entire liability. We agree.

¶ 37        As held previously, the requirement that an employer must insure its "entire liability" is not ambiguous. Read in context with the rest of section 4(a)(3), it requires an employer to carry insurance sufficient to cover its whole/complete/total legal obligation to pay the workers'

15

compensation benefits to which its employee is entitled in Illinois under the Act. Section 4(a)(3) provides that this insurance must be in "some insurance carrier authorized, licensed, or permitted to do such insurance business in this State" (*id.*) which Continental is. It further requires that "[e]very policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured" (*id.*) which the Continental policy does if the other states endorsement applies.

¶ 38        All section 4(a)(3) requires is that the employer acquire the mandated insurance from a carrier authorized, licensed or permitted to do such insurance business in Illinois and that the insurance covers "all the employees and the entire compensation liability." *Id*. Nothing in section 4(a)(3) suggests that the mandated insurance coverage must be in a "separate" policy covering only the workers' compensation benefits due under the Act, *i.e.*, covering only workers' compensation benefits due for injuries occurring in Illinois.

¶ 39        Section 4(a)(3) provides that, as long as (1) the employer's entire compensation liability to "employees working at or from one location shall be insured in one such insurance carrier or shall be self-insured" and (2) the employer has submitted satisfactory evidence to the commission that its entire liability for the compensation provided for in the Act will be secured, then the employer may insure its compensation liability under the Act with two or more insurance carriers. *Id.* In fact, if those two requirements are met, the employer may even choose to insure only "a part" of its liability and then secure the remainder of its liability by either self-insuring (820 ILCS 305/4(a)(1) (West 2010)) or furnishing security, indemnity or a bond guaranteeing payment (820 ILCS 305/4(a)(2) (West 2010)) or making some other provision that is satisfactory to the commission (820 ILCS 305/4(a)(4) (West 2010)).

¶ 40        As our supreme court explained, section 4(a)(3) "affords [employers] the flexibility to use

any of the latter three options (self-insuring; furnishing security, etc.; or 'other') to secure payment of part of their obligation and then to purchase an excess coverage policy for the remainder." *Skokie Castings, Inc.*, 2013 IL 113873, ¶ 6. If, as Continental suggests, section 4(a)(3) is read to require that the employer must insure its liability under the Act in a "separate" (*i.e.*, individual and stand alone) policy, then the employer's flexibility to split its insurance obligation across multiple channels will be read out of section 4(a)(3).

¶ 41    Here, Knox's employees all work from one location. Therefore, section 4(a)(3) requires that Knox's entire workers' compensation liability to its employees "shall be insured in one such insurance carrier or shall be self-insured." 820 ILCS 305/4(a)(3) (West 2010). In other words, under the Act, Knox had the flexibility to either insure its entire liability under one policy or self-insure the entire liability. *Id*. Again, there is no language in section 4(a)(3) requiring that, if the employer chooses to insure rather than self-insure, the insurance be in a separate policy covering only Knox's liability in Illinois under the Act.

¶ 42    The endorsement provides that, if its conditions are met, then Continental "will pay promptly when due the benefits required of [Knox] by the workers' compensation law of any state not listed in Item 3.A of the information Page." This language in the endorsement is clear: if the endorsement applies, then Continental will pay the benefits required of Knox by the workers' compensation law of Illinois, which are the benefits due under the Act. Continental's representative, Gary Richer, testified as much in his discovery deposition. Richer, the assistant vice president of workers' compensation claims for Continental's third-party administrator Berkley Risk Administrators, LLC., testified that the endorsement did not limit the amount of coverage available in an "other state" to the coverage payable under the laws of Indiana. Thus, if the endorsement applies, the Continental policy will provide the insurance required of Knox

17

under Illinois law, not Indiana law.

¶ 43    The endorsement excludes coverage if, in the state where the employee is claiming benefits, at the time of injury, Knox (1) has "other workers' compensation insurance coverage," (2) was "by virtue of the nature of [its] operations in that state, required by that state's law to have obtained separate workers' compensation insurance coverage," or (3) is self-insured. Exclusions 1 and 3 do not apply here as Knox had no other workers' compensation insurance coverage in Illinois and was not self-insured in Illinois. Exclusion 2 does not apply since, as held above, Illinois law does not require that Knox maintain a "separate" insurance policy for its liability arising under the Act.

¶ 44    As the parties point out, there is no reported Illinois decision construing the condition in a "residual market limited other states insurance endorsement" that there is no coverage under the endorsement if, at the time of injury, the employer is required by the other state's law "to have obtained *separate* workers' compensation insurance coverage." (Emphasis added.) However, in *Zurich American Insurance Co. v. Uninsured Employers' Fund,* 13 A.3d 98 (Md. Ct. Spec. App. 2011), the court of special appeals of Maryland considered the question of coverage under an identical "residual market limited other states insurance endorsement." The court posed the same question as we are deciding here: whether the endorsement exclusion condition is satisfied if the "other state" requires *any* workers' compensation insurance coverage rather than *separate* coverage. *Id.* at 107. The court found it was not. *Id*. Although we are not bound to follow decisions from other states, we may look to *Zurich American Insurance Co.* for persuasive authority. *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 186 (2005).

¶ 45    In *Zurich American Insurance Co.*, the court held that Maryland law required that the employer have insurance coverage but did not require the employer to have "separate" coverage.

*Zurich American Insurance Co.,* 13 A.3d at 107. The court noted that "[t]he Endorsement does not state *** that merely because the state in which injury occurred requires insurance coverage, coverage does not exist under the Endorsement." *Id*. Rather, the endorsement provided coverage "unless" by virtue of the employer's operations in Maryland the employer was required by Maryland law " 'to have obtained separate workers compensation insurance coverage.' " *Id*. Therefore, since the Delaware-based employee was working in Maryland only temporarily and the employer was not required to have *separate* coverage in Maryland under Maryland law, the court found the other states endorsement provided coverage sufficient to satisfy Maryland law. *Id*.

¶ 46        We find similarly here. Illinois law requires Knox to have insurance coverage, not separate insurance coverage. As the court aptly explained in *Zurich American Insurance Co.*, to read the endorsement to mean that coverage does not exist if the other state requires *any* coverage "renders nugatory the word 'separate' " in the endorsement. *Id*. Accordingly, the circuit court erred in finding that section 4(a)(3) of the Act required Knox to have separate insurance for Illinois claims and that Knox, therefore, failed to meet a condition of the endorsement.

¶ 47        The court's order granting summary judgment in favor of Continental and against Knox on this basis is reversed.

¶ 48        We remand to the circuit court for further proceedings on Knox's cross-motion for summary judgment and any unresolved issues in Continental's motion for summary judgment.

¶ 49                                    CONCLUSION

¶ 50        For the reasons stated above, we reverse the circuit court's grant of summary judgment to Continental and remand for further proceedings.

¶ 51        Reversed and remanded.